ELLA F. VANNEST, ANNIE E. JOHNSON, RICHARD M. MURPHY, JOHN F. MURPHY, MAGGIE MEEHAN, MARY MURPHY v. W. P. MURPHY, E. A. MURPHY, JOHANNA ORGAN, Appellants.

**Evidence of mental capacity.**   Evidence tending to show incidents
1   bearing upon a decedent's condition of mind, and not a mere
    conclusion as to his mental condition, is competent.

**Evidence:** ADMISSIBILITY OF CONCLUSION.   Where the facts cannot
2   well be reproduced or described by the witness, evidence in
    the nature of his conclusion is admissible.

**Evidence:** HEARSAY: REMOTENESS.   Hearsay evidence and that
3   which relates to circumstances so remote in point of time as to
    have no bearing on the question at issue should be excluded.

Will contest: ADMISSIONS OF LEGATEE. The admissions of a legatee
4  concerning advancements made to him by the testator are
   inadmissible in an action to set the will aside on the ground
   of undue influence.

Same: STATEMENTS OF LEGATEE: DECLARATIONS OF TESTATOR. In a
5  will contest on the ground of undue influence, evidence of con-
   versations in the presence of testator in which defendant, a
   legatee, participated is admissible as tending to show his re-
   lations with deceased; and declarations of testator are also ad-
   missible as tending to show his condition of mind and the
   effect of any influence which may have been exerted.

Expert evidence: INSTRUCTION. An instruction with respect to ex-
6  pert testimony should not be so worded as to leave the jury
   to determine what facts embodied in the hypothetical ques-
   tion are "substantially" proven; unless all the facts are es-
   tablished the opinion should be rejected.

Non-expert evidence: INSTRUCTION. The jury should be in-
7  structed to give weight to the opinion of a non-expert witness
   only so far as the same is based upon facts previously detailed
   by him.

Wills: UNDUE INFLUENCE: BURDEN OF PROOF. The mere fact that a
8  son looks after his mother's business affairs, signs her name
   to checks for her and in a filial manner gives his attention to
   her minor matters of business, will not constitute him her
   confidential agent or advisor in such a sense as to raise the
   presumption that a provision in her will for his benefit was
   the result of undue influence exerted by him, and thus cast
   upon him the burden of making affirmative proof that the
   provision was not the result of his unjust influence.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON,
Judge.

MONDAY, JUNE 10, 1907.

Mary L. Murphy died testate May 28, 1904, and her
will was admitted to probate in June of the same year. On
July 27, 1904, the plaintiffs filed their petition, alleging that
at the time of executing the will she was of unsound mind,
and that the will was procured through undue influence ex-
erted by W. P. Murphy. The trial resulted in a verdict for

defendant, on which judgment was entered setting the will aside. The plaintiffs appeal.— *Reversed.*

*Thomas Stapleton* and *Stockman & Hamilton,* for appellants.

*J. B. Murphy* and *J. M. Dower,* for appellees.

LADD, J.— There are thirty-eight assignments of error, all of which are argued by appellants. As counsel have ignored part of the rules in the preparation of their brief, we shall consider only such errors as require attention in view of another trial.

I. The question, " What did you observe with respect to her mental condition ? " and like inquiries, were treated by the witnesses as calling for incidents bearing on the condition of the mind of deceased, and not for their opinion as to whether it was unsound. For this reason, the rulings permitting answers were without prejudice.

1. EVIDENCE OF MENTAL CAPACITY.

II. A witness testified that " she acted very childish, as though she had forgotten, as though she was childish," and another that every time she had seen her for two or three years she seemed to have grown weak physically. While these answers are in the nature of conclusions, they relate to matters which could not well have been reproduced or described to the jury precisely as they appeared to the witness, and for this reason, under a well-established rule, were permissible. *Yahn v. Ottumwa,* 60 Iowa, 429; *Bizer v. Bizer,* 110 Iowa, 247; *Stewart v. Anderson,* 111 Iowa, 329.

2. EVIDENCE: admissibility of conclusion.

III. One Powell, when on the stand, was asked " whether John R. Murphy came to your house one night in trouble," and over objection answered, " Yes, sir." Q. " You may detail what was said." Over objection the witness then answered that he had come to his place after he had retired, and

3. EVIDENCE: hearsay: remoteness.

stated that he and Willie had had some trouble, and that Willie had run him off the place. This occurred eighteen years before the trial. This was hearsay. Moreover, the evidence should have been excluded, as the circumstances were too remote, and could have had no bearing whatever on the issues in the case, save to prejudice the minds of the jury against Murphy. The same is true of the evidence of Mrs. Vannest, in which she related that some eighteen years previous to the trial he had taken his gun and run his father off the premises, so that he stayed away all night. The evidence of Winnie Cash that she saw him throw his father on the porch, and that she and her aunt run out and kept him from killing him, about eleven years prior to the trial, should also have been excluded. The same is true as to the testimony of Mrs. Richard Murphy as to a like transaction. All this evidence was extremely prejudicial, and should have been excluded.

IV. Vannest, as a witness, was allowed to detail a conversation with W. P. Murphy, in which he made certain declarations concerning advancements to him by his mother of money, and also to the other children. Such declarations were inadmissible under the well-established rule of this court. See *Fothergill v. Fothergill,* 129 Iowa, 93.

4. WILL CONTEST: admissions of legatee.

V. Testimony concerning conversations in the presence of the deceased, in which W. P. Murphy participated, and also of declarations of the deceased, were admitted over objections. The rulings were correct, as what Murphy said in the presence of the deceased was admissible as tending to show his relation with her, and that of her declarations was receivable as tending to show the condition of her mind and the effect of any influences, which may have been exerted, had produced thereon. See *Johnson v. Johnson,* 134 Iowa, 33; *Hobson v. Moorman,* 115 Tenn. 73 (90 S. W. 152, 3 L. R. A. (N. S.) 749).

5. SAME: statements of legatee: declarations of testator.

VI.   With reference to expert testimony, the court instructed the jury that, if " the statements of fact, which are accepted as true for the purpose of answering the hypothetical questions are substantially correct, then you will give to said testimony such weight as you deem it entitled to; but in any case where a hypothetical question is not a correct statement of the facts, then in such case you will wholly disregard the answer."   The use of the word " substantially " is criticised. It means " in substance," " essentially."   *Hardin Co. v. Weels,* 108 Iowa, 174.   See 27 Am. & Eng. Ency. of Law (2d Ed.) 288.   In the connection employed, it may have been understood to mean the facts must be found, not in the words, but in substance as recited.   This is apparent from the direction to disregard the answer, unless the question contained a correct statement of the facts.   The use of the word, however, in this connection, cannot be commended, for there is no assurance that the jury might not be misled thereby. The instruction was condemned *In re Jones,* 130 Iowa, 177; as was also an instruction like that given on non-expert testimony.

*6. EXPERT EVIDENCE: instruction.*

VII.   In referring to the opinion of the non-expert witnesses, the instruction reads:   " These opinions were based upon their personal knowledge of the testatrix, and upon her acts and declarations known to them. You will carefully consider the facts and circumstances detailed by them, and give the various opinions of said witnesses such weight as you deem them entitled to, taking into consideration the knowledge, or means of knowledge, observation, interest, and candor, or lack of same, as shown by said witnesses while upon the stand.   It does not follow that, because a witness, expert or non-expert, has testified that the testatrix was of sound or unsound mind, you should so find; but you should take such opinions into consideration, and give to them such weight and credit as you deem them entitled to, and there-

*7. NON-EXPERT EVIDENCE: instruction.*

with you should consider all of the facts and circumstances disclosed by the evidence, and from all of the same arrive at such conclusion upon the question of testamentary capacity as you believe the evidence to warrant." This instruction plainly authorized the jury to take into consideration the witnesses' personal knowledge of the deceased, independent of facts detailed on which their opinions should have been based, and in this respect was erroneous. The true rule, which requires the jury to give weight to the opinion of the non-expert only as based on the facts detailed by the witness, was not stated, and by telling the jury that the opinions were based upon their personal knowledge, the jury might have fairly understood that this might be taken into consideration by them.

VIII. With reference to the burden of proof, the court instructed the jury: " The fact that defendant W. P. Murphy was the business agent of testatrix, and that he received more than his distributive share of the estate, would not put the burden of proof upon him of showing that the will was not made by his procurement or influence; but if you find from the evidence that the said W. P. Murphy was the confidential business agent of the testatrix, and that he was instrumental in procuring the making of said will, and in determining its provisions, then you are instructed that upon the question of undue influence the burden of proof is placed upon the defendant W. P. Murphy to show by the preponderance of evidence that the will was not procured by undue influence." The evidence was not such as to call for this instruction. It appeared that the husband of deceased died February 14, 1900. W. P. Murphy was appointed special administrator of his estate and upon the admission of the will to probate the widow was appointed executrix. Thereafter she was relieved, and W. P. Murphy appointed administrator with the will annexed. The estate was settled some time in 1901. The widow, who received all the property,

8. WILLS: undue influence: burden of proof.

converted it into money, save a house and lot. The record does not disclose what this amounted to. Upon the appointment of a guardian for her in July, 1902, there appears to have been about $3,500. deposited in the bank, besides three notes, amounting to $1,100. Prior to that she had given one of her daughters $200. and the other $100. each, and W. P. Murphy $1,000. besides loaning him another $1,000.

There is no doubt that the latter looked after her business for her, such as she had, and checks on the banks were signed " Mary L. Murphy, by W. P. Murphy "; but there is nothing in the record to indicate that he did more, or otherwise than to carry out her instructions. Indeed, in handing his sister the check for $200. mentioned above, he disclaimed any part in it himself. For all that appears, he did no more than perform services which any child might be called upon by a parent to do. The mere fact that he looked after some business transactions for her, or signed her name to checks for her, did not constitute him her confidential agent in any such sense as to justify the inference that provision for him in the will was induced by undue influence. Such presumption only arises from relations of implicit confidence and trust, such as guardian and ward, attorney and client, priest or other spiritual adviser, and those looking to him for advice, and the like, in which the temptation and opportunity for abuse would be too great, if the beneficiary were not required to make affirmative proof that he did not betray the confidence placed in him, nor so use his influence to coerce or mislead the testator, or otherwise obtain an undue influence over him. The same rule might apply to the relationship between members of the same family, ordinarily one of trust and confidence, were it not for the fact that a testamentary disposition in favor of relatives by consanguinity is regarded as natural and just. In no instance to be found in the books has undue influence been presumed merely from the relation of parent and child, husband and wife, or any other relation either of consanguinity or affinity. Such in-

fluence is legitimate, and, if the will is the natural result thereof, it will be presumed to be the product of its lawful exercise. Neither inequality, nor even injustice, in the respective amounts given by the testator to his several children, raises a presumption of undue influence. *Turnure v. Turnure,* 35 N. J. Eq. 437. From the mere fact that W. P. Murphy lived with his mother and looked after such small matters of business for her as required attention, the imputation of having exerted improper means to induce the execution of the will ought not to be inferred. He may have been, in a sense, her agent; but what he did in the transaction of her business was entirely consistent with their relation as parent and child. She was not deprived of the opportunity of consulting others, nor does the record indicate that she was, in fact, or because of her enfeebled condition, dependent on his care. See *Marshall v. Hanby,* 115 Iowa, 318.

Something more than merely the relation of parent and child, and an opportunity for unfair dealing, must be shown. It must appear that the parent has been imposed on in some way, or overcome by the practices of the child to the advantage of the latter, before the burden of proof can be shifted. *In re Will of Martin,* 98 N. Y. 193. See, also, *Tyler v. Gardiner,* 35 N. Y. 559; *Armstrong v. Armstrong,* 63 Wis. 163 (23 N. W. 407); *Sechrest v. Edwards,* 4 Metc. (Ky.) 163; *Dale v. Dale,* 36 N. J. Eq. 269; *In re Will of Nelson,* 39 Minn. 204 (39 N. W. 143); *Latham v. Udell,* 38 Mich. 238. See notes to *In re Hess's Will,* 48 Minn. 504 (51 N. W. 614, 31 Am. St. Rep. 665), and *Richmond's Appeal,* 59 Conn. 226 (22 Atl. 82, 21 Am. St. Rep. 85). And such imposition or improper practices, in the absence of any evidence of dependency, cannot be inferred from acts entirely consistent with the proper observance of filial duty. The evidence was not such as to shift the burden of proof, and the instruction ought not to have been given.— *Reversed.*