THEODORE KUHL, County Treasurer, Appellant, v. E. N. CHAMBERLAIN and ROBERT BELL, Appellees.

**County Depositaries:** BONDS: LIABILITY OF SURETIES. A bond executed to a county treasurer by a banker expecting to be appointed a depositary of public funds and which his sureties so informed signed with that understanding, but neither the appointment nor approval of the bond was had as contemplated by the statute, cannot be enforced against the sureties as a common law liability, especially in view of the fact that giving the bond the force of a common law obligation the liability of the sureties would be increased.

**Same.** The liability of a surety must be determined by the conditions expressed in the instrument; so that where a banker gave the treasurer a bond as a depositary of county funds, the liability of his sureties for loss of the same cannot be construed as an obligation to pay a private debt to the treasurer.

**Same:** EXCLUSION OF EVIDENCE: HARMLESS ERROR. The books of a banker receiving county funds on deposit are admissible against his sureties in a suit by the treasurer on his bond, for the purpose of making a *prima facie* case in plaintiff's favor; but the error in excluding them was not prejudicial where upon the whole record plaintiff was not entitled to recover.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, DECEMBER 17, 1908.

THIS is an action by plaintiff upon a bond executed by the defendants as sureties for one H. S. Green. There was a trial to the court without a jury. Findings and judgment for the defendants. Plaintiff appeals.—*Affirmed.*

*Shaw, Sims & Kuehnle,* for appellant.

*Conner & Lally,* for appellees.

EVANS, J.—The bond sued on is in these words:

Know all men, that we, H. S. Green as principal, and E. N. Chamberlain and Robert Bell as sureties, are held and firmly bound unto Theodore Kuhl, county treasurer, and his sureties, Crawford County, State of Iowa, in the sum of four thousand no one hundredth dollars, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors and assigns, firmly by these presents. Dated at Dow City, Iowa, this 13th day of January, 1904. The condition of this bond is such that, whereas, the said H. S. Green has been appointed a county depositary of public funds within and for said county. Now, if he shall render a true account of his office, and of his doings therein, to the proper authority, when required thereby or by law, that he will promptly pay over to the person or officer entitled thereto all money which may come into his hands by virtue of his office;

that he will promptly account for all balances of money remaining in his hands at the termination of his office; that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all moneys, books, papers, securities or other property appertaining to his said office, and deliver them to his successor, or any other person authorized to receive the same; and that he will faithfully and impartially, without fear, favor, fraud or oppression, discharge all duties now or hereafter required of his office by law—then this bond to be void, otherwise of force and virtue. H. S. Green. Robert Bell. E. N. Chamberlain.

At the time of the execution of such bond, the plaintiff was the county treasurer of Crawford County and continued in such office up to the time of the trial of this case in the court below. H. S. Green was a banker owning and operating an unincorporated bank, known as the "Exchange Bank of Dow City." For more than a year prior to the execution of the bond, the plaintiff, while acting as county treasurer, carried an account in the Exchange Bank by depositing moneys therein and drawing the same from time to time. The deposits in large part were made in this wise: He permitted taxpayers in the vicinity of Dow City to pay the amount of their taxes into the Exchange Bank, and, upon being notified of such payment, he sent the tax receipts to the Exchange Bank to be delivered to the taxpayers. The bank, upon receiving payments from the taxpayers, charged itself by credits to the account of Theodore Kuhl, county treasurer. Whether these credits were made before or after the delivery of the tax receipts to the taxpayers does not appear in the record. About January 13, 1904, Green applied to the defendants severally and stated to each of them that he expected to be appointed on the following day by the board of supervisors as a county depositary for the public funds of the county, and that it was necessary for him to have a bond for such purpose. Upon this statement of

Green, the defendants each signed the bond and left the same in Green's hands. The bond never was presented to the board of supervisors for any purpose at any time, nor was the said Green or his bank appointed or selected in any sense as a depositary for public funds. The bond was delivered to the plaintiff, and thereafter the Exchange Bank continued to receive deposits and credit the same to the plaintiff substantially as before, until the 1st day of April, 1904. On that date the bank failed, and Green absconded. His books showed a credit in favor of plaintiff in the sum of $2,336. The lower court made a finding of fact that Green was insolvent at the time of the execution of the bond, and for a long time prior thereto. At the June, 1904, meeting of the board of supervisors, the plaintiff made a full settlement with the board, but made no report or account of any public funds in the Exchange Bank of Dow City. On the contrary, he charged himself with the full amount due from him to the county and accounted for it either with cash or proper certification from other banks.

Crawford County claims no interest in the funds on deposit in the Exchange Bank, nor does the plaintiff now claim that such county has any interest therein, although plaintiff in his original petition averred that the funds in question were deposited in the Exchange Bank as public funds. He later filed a substituted petition, in which he omits all allegations as to the public character of the funds, but claims to recover on the bond in his own individual right, on the theory that the same was given to secure him in the repayment of such moneys as should be deposited by him in the Exchange Bank regardless of their public character. He claims to recover upon the bond, not as a statutory bond, but as a common-law bond. His contention is that the same is a valid obligation and supported by sufficient consideration, and that the defendants are liable to him under the express terms of the instru-

ment. The contention of the defendants, in brief is, that the bond was executed by them for the purpose already stated above, that such purpose appeared upon the face of the bond, that it was intended as a statutory bond under the provisions of section 1457 of the Code, that the bond could not be lawfully delivered until appointment or selection of the said Green as a county depositary of public funds was made by the board of supervisors, and that such selection was never made, and that the bond therefore never became effective. Section 1457, so far as material to this inquiry, is as follows:

A county treasurer shall be liable to a like fine for loaning out or in any manner using for private purposes, State, county or other funds in his hands, except that when permitted by the board of supervisors by resolution entered of record, he may deposit such funds in any banks in the State to any amount fixed by such resolution; but before such deposit is made, such bank shall file a bond with sureties to be approved by the treasurer and the board of supervisors in double the maximum amount permitted to be deposited, conditioned to hold the treasurer harmless from all loss by reason of such deposits.

I. Counsel for plaintiff frankly concede that, unless this bond can be construed as a common-law bond, and not as a statutory bond, they have no standing in court. They concede that, if the bond is to be deemed a statutory bond, defendant's contention must prevail. They argue, however, that it is not a statutory bond; that it does not purport to be such; that there is no such office as county depositary, and the references thereto contained in the bond must be deemed nugatory, and the bond must be enforced according to its plain terms in other respects; that the plaintiff is the obligee in the bond, and on the faith of it he deposited moneys with the Exchange Bank; and that he is now personally entitled to the indemnity provided for. While it is un-

1. COUNTY DEPOS- ITARIES: bonds: liability of sureties.

doubtedly true that there is no public office known as a
county depositary, it is nevertheless true that section 1457
does provide for the selection of certain agencies for the
custody of public funds, and that the board of supervisors is
charged with the duty of conferring public authority upon
such agencies for that purpose, by a formal resolution and
by fixing the maximum limit which may be deposited with
each one.   "County depositary of public funds within and
for said county" is not an inappropriate description of such
agencies as are contemplated by section 1457. If it be
regarded as not sufficiently specific so as to be free from
ambiguity, the oral evidence may be considered to remove
such ambiguity.   With the aid of such oral evidence, it
appears very clearly that the attempt of the parties was
to execute a statutory bond. If the said Green had after-
wards been permitted by resolution of the board to receive
public funds, and if his bond had been approved by the
treasurer and the board, there could be no doubt, we think,
of its validity as a statutory bond.   If its failure to become
a statutory bond was because of defect of form or execution,
it may be that a different question would arise; but the
failure in this case arose after its execution by the defend-
ants, in the failure of the plan of appointment in pursuance
of which the bond was executed, and in the failure to pre-
sent the bond to the board of supervisors for its approval,
and in the failure of the plaintiff himself to approve it
after it had been delivered to him. The bond having been
delivered to the plaintiff, there was sufficient appearing
upon its face to put him upon inquiry, and to charge him
with notice that it was intended as a statutory bond. He
could not by his own failure to approve, and by his own
failure to present it to the board of supervisors for approval,
convert it from the one class to the other, to his own private
benefit. It is alleged in argument that the sureties were in
no manner hurt by treating the bond as a common-law bond
rather than a statutory bond, and that their undertaking

was the same in either case, in that they would have been liable for just as much under a statutory bond as under a common-law bond. If this were so, it would not authorize the court to make a new contract for the sureties. Nor are we ready to assent to the ground of the argument. As a statutory bond, the maximum limit of liability of the defendants would be only $2,000. Without discussing the question of whether the sureties had a right to be influenced in lending their suretyship by the supposed fact that the board of supervisors would permit only solvent banks to be selected, there is much to be said for the proposition that a surety might rely upon the judgment of the board of supervisors in such cases. Be that as it may, the enlarged liability already noted is an answer to appellant's argument in that regard.

II. There is a further reason which seems to us quite fatal to plaintiff's recovery. If he can recover upon this bond as a common-law bond, it must be because the very terms of the bond so provide. We are unable to read any provision of this bond

2. SAME.

whereby it undertakes that Green should pay to the plaintiff any sum whatsoever. True, Theodore Kuhl, county treasurer, and his sureties, Crawford County, State of Iowa, are all specified as the obligees of the bond; but the liability of the sureties is to be determined by the specified conditions of the bond, and they can not be charged with liability except for breach of some specific condition of the bond. See *Crapo v. Brown*, 40 Iowa, 487; *Noyes v. Granger*, 51 Iowa, 227. Their liability can not be enlarged beyond the specified conditions of the bond. Reading the conditions of this bond, we are unable to discover any condition therein as a basis of liability on the part of the sureties which binds Green to the payment of any private debt to the plaintiff or any other person. Every duty which is contemplated on the part of Green is to be in the nature of an official duty. It will not do for

us to say therefore that we may depart from the terms of the bond and hold the sureties liable to the plaintiff as for failure on the part of Green to pay a private debt to the plaintiff, simply because the funds deposited lost their public character, and because the plaintiff in dealing with Green lost his official character, through his own failure to comply with the requirements of the law. The undertaking of the sureties is that Green shall render a due account of his office "to the proper authority," and that he will pay over all the money which may come into his hands "by virtue of his office." It is suggested, in explanation of the form of the bond, that the parties used a blank form of official bond, and undertook to adapt it to their uses, and that such adaptation was not skillfully done. This is only saying that the bond, as executed, does not quite express the intent of the parties. If that be so, it must needs be reformed before it can be enforced, except in accordance with its terms as actually expressed.

III. On the trial of the case the plaintiff offered in evidence the bank books of H. S. Green for the purpose of showing the amount of his deposits in said bank at the time of its failure. These books consisted both of journals and ledgers, and show an itemized account with the plaintiff including all items of deposit and withdrawal, and showing a balance in his favor of $2,336.64. The defendants objected to the introduction of these books on the ground that they were incompetent as against the defendant sureties; such defendants not being parties to the transaction. This objection was sustained. In this ruling the trial court doubtless erred. The books were admissible in plaintiff's favor as against the defendant sureties, for the purpose of making a *prima facie* case. See *Boone County v. Jones,* 54 Iowa, 709; *Wadsworth v. Gerhard,* 55 Iowa, 369. But this error on the part of the trial court will not entitle the plaintiff to a reversal, if upon the record as

3. SAME: exclusion of evidence: harmless error.

a whole he was not entitled to recover, even though such books had been properly admitted in evidence. For the purpose of the consideration of the case which we have given in the foregoing paragraphs, we have treated the offered evidence the same as though it had been admitted.

From what we have already said, it is manifest that a correct ruling by the trial court at this point would not have saved the plaintiff at the close of all the evidence.

Notwithstanding such error, therefore, the judgment below must be *affirmed*.