In re Estate of Joseph N. Cooper.

J. P. COOPER et al., Appellants, v. JOSEPHINE P. BRIDGE et al., Appellees.

EVIDENCE: Opinion Evidence—Insanity—Basis. Nonexpert opinion as to the insanity of a person must be preceded by a *fact* recital as a basis therefor. Record reviewed, and held that the basis for the opinion in question was quite insufficient.

WILLS: Contests—Formal Execution as Issue. The "due and formal execution" of a will and of a codicil thereto should not be submitted to the jury when such execution stands unquestioned in the testimony.

WILLS: Contests—Erroneous Instructions. Manifest error results from instructing a jury (1) that, if testimony is introduced which counterbalances the presumption that a will was executed by a sane person, the party supporting the will must show by affirmative evidence that the person was sane; (2) that a testator is not of sound mind if he is not in full possession of his faculties; and (3)

that the will of an aged person should not be sustained unless it appears to be fair and "to accord with intentions previously expressed or implied from family relations."

**APPEAL AND ERROR:** Argument—Penalizing Disregard of Rules.
4  A disregard of the rules in the preparation of an argument will ordinarily be penalized by the imposition of costs.

*Appeal from Marshall District Court.*—JAMES W. WILLETT, Judge.

## JUNE 22, 1923.

THIS is a will contest. The contest was predicated upon two grounds: (1) That the testator was mentally incapacitated to make the will and codicil thereto; (2) that the testator was unduly influenced to make the same by two of the beneficiaries thereof or by others. There was a verdict for the contestants, and judgment accordingly. The proponents appeal.—*Reversed and remanded.*

*F. E. Northup* and *G. A. Mote,* for appellants.

*E. N. Farber* and *H. C. Lounsberry,* for appellees.

EVANS, J.—The testator was Joseph N. Cooper, who died on May 28, 1919, at 82 years of age. His will in question was executed on January 4, 1913, and the codicil thereto on the 13th day of May, 1919. The testator left surviving him two daughters and three sons, one grandson, and one granddaughter, as his personal representatives. The granddaughter, Josephine Bridge, was the only child of a deceased daughter of the testator's. The grandchild, Chancy Cooper, was the only child of a deceased son of the testator's. The principal beneficiaries of the will were two sons and two daughters. The third son received a bequest therein of $2,000. The granddaughter received $500, and the grandson received nothing. The contestants are the two grandchildren and the son James W. Cooper. The testator had been a resident of Marshall County for nearly 60 years, and for the most of that time had lived upon a farm, which he owned at the time of his death. His first wife had

died in 1897. In 1901, he married a second wife, and obtained a divorce from her a few years later. The evidence relied on by contestants in proof of his alleged mental incapacity consisted largely of the opinions of nonexpert witnesses. A very considerable part of such evidence was, on its face, of doubtful admissibility.

I. Mrs. Surrelda Birks was a nonexpert witness for the contestants. Over appropriate objections, she was permitted to testify that, in her opinion, testator was not of sound mind, in the last seven or eight years of his life. The objection was persistently made, through much colloquy, that no foundation had been laid in a statement of facts to render the opinion of the witness competent. The witness had testified that she had lived neighbor to the testator, and had known him all her life. Such testimony was addressed largely to the general character of the testator long years ago. Her testimony consisted largely of expressions of opinion and characterization of the testator that was not complimentary to him. Manifestly, in order to qualify the witness to testify to the mental unsoundness of the testator within the last seven or eight years, it was requisite that she state the specific facts or circumstances upon which she based her opinion. We have gone through her voluminous testimony, and glean the following as the only semblance of a recital of facts transpiring in the last seven or eight years which is contained in her testimony:

1. EVIDENCE: opinion evidence: insanity: basis.

"He and I used to have quite a few arguments on politics and religion. He would forget what he would read, and it seemed he didn't care what was going on around him at the present. He told me one day, if he could go back to 19, he would be willing to give up everything he had, just take his gun and dog and live his life over again. He would tell how they settled up the country, his hunting exploits, about going with the girls, what good girls they had then, and they didn't have such good girls now, and such as that. * * * A. Oh, he would talk about them; he never got tired of talking about them, all the time, if he could get anyone to listen to him about it. * * * A. Well, he was growing weaker in his body and mentally growing weaker all the while; he was easily influenced in talk-

ing to him. * * * A. Well, in being with any person, all the time,—now, I knew him when he was a young man, and he had a cast-iron will of his own. What he believed, he believed, and you couldn't turn him; but in later years, you could,—you could talk to him, and convince him; he would acknowledge it; but when he was a young man, he did not acknowledge it, if he was convinced, I don't think; at least, I have thought so when he was arguing politics. I never noticed any difference in his sense of sight or hearing during the later years of his life. I only heard him one time say anything about his business affairs,—he told me he was going to sell his farm. He was not a man that talked much about his business."

It is too well settled to justify a citation of authorities that a nonexpert witness may testify to his opinion of mental unsoundness only after he has stated specific facts upon which he bases such opinion. The question calling for such opinion should, on its face, confine the witness to the facts recited by him as a basis for his opinion. We can discover nothing in the testimony of this witness which formed any basis whatever for the opinion expressed by her.

Indeed, the attempt to qualify this witness resulted only in added error. She appears to have been a free lance. She was permitted to testify, in regard to the testator, that he "was always on the grumpy order," and "always was sick, in his own estimation," and that "he was one of these men that takes it for granted that the wife can do it all, when it comes to taking care of the children;" that "he considered her as a kind of inferior being,—that she was below him in every respect;" that "he was a man that never paid much attention to his children,—he didn't seem to take much interest in them."

Over appropriate objections, the following was received:

"Q. Well, what did you observe was the effect, if anything, of his attitude toward his wife, on her? A. Well, it was—sometimes it would hurt her feelings— Q. How do you know? A. —till she would give up and cry about it, and other times she wouldn't pay any attention to it."

Again, over appropriate objections, the following was received:

"Mrs. Birks, were you, during the years of your acquain-

tance with Joseph N. Cooper, acquainted with his reputation in the vicinity where you and he lived, as to his being a man of calm temperament or otherwise? Just answer 'yes' or 'no.' A. He was not calm. Q. It is not whether you knew it or not, —'yes' or 'no'? A. Yes, I knew it. Q. Yes,—now state to the court and jury what that reputation was. A. Well, he was counted an excitable, ill-natured man, and a man, when he got that way, that he scarcely knew what he was doing. That was his general reputation through the neighborhood, as far as I knew it. Q. Now, I believe that you stated that Joseph N. Cooper's father had lived in that same community? A. Yes, sir, he settled there in Timber Creek Township,—yes. Q. And were you acquainted with his reputation in regard to his being a calm or excitable man? Just answer 'yes' or 'no.' A. Yes, I knew his reputation. Q. What was it, with respect to his being a man of calm and even temperament or otherwise? A. Well, he was counted an excitable and emotional man. I have heard his children say the same thing, and I have seen him myself when he was nervous and an excitable person. During the last ten or twelve years of his life, his physical condition was going down all the while. Q. What would you say as to his condition, mentally improving or not? A. Well, his mind was getting just as weak according as his body.''

In quoting the foregoing record, we omit, for brevity's sake, all the objections and colloquies between court and counsel. The foregoing record speaks for itself, and requires no discussion on our part. It was manifestly improper and prejudicial. The foregoing record of the testimony of this witness, in so far as it bears upon the competency of her nonexpert opinion, is fairly illustrative of a considerable part of the record, as pertaining to other witnesses. No useful purpose could be subserved by our going into further details.

II. Instructions VI, VII, and VIII, given by the court, were as follows:

''VI. You are further instructed that the burden of proof is on the proponents herein to establish by sufficient evidence, to the entire satisfaction of the jury, the fact that the paper writing introduced in evidence by them as Exhibit A, dated January 4, 1913,

2. WILLS: contests: formal execution as issue.

and offered by the proponents for probate, was voluntarily signed by the decedent, Joseph N. Cooper, at a time when he knew and understood the contents and the full purport and effect thereof, as his last will and testament, and that the same was at the request of the testator, or by the request of some other person in his presence, to which he made no objection, signed in his presence by two or more competent witnesses, and that he, the said Joseph N. Cooper, then and there declared the said instrument, in the presence of said witnesses, to be his last will and testament. That, if the proponents fail to prove the foregoing facts by a preponderance of the evidence, then and in that event, you will proceed no further, but return your verdict for the contestants.

"VII. You are further instructed that the burden of proof is on the proponents herein to establish by sufficient evidence, to the entire satisfaction of the jury, the fact that the codicil bearing date May 13, 1919, offered by the proponents for probate with the original will, was voluntarily signed by the decedent, Joseph N. Cooper, when he knew and understood the contents and the full purport and effect thereof, as a codicil to his last will and testament; and that said codicil was, at the request of the testator, or by the request of some other person in his presence, to which he made no objection, signed in his presence, by two or more competent witnesses; and that he, the said Joseph N. Cooper, then and there declared the said codicil in the presence of said witnesses to be a codicil to his last will and testament. If the proponents fail to prove the foregoing facts by a preponderance of the evidence as to said codicil, then and in that event you will find for contestants on that proposition.

"VIII. You are instructed that, if you find by a preponderance of the evidence introduced at the trial herein, that the proposed instrument of January 4, 1913, being Exhibit A, with or without said codicil, Exhibit B, was executed in full compliance with the law governing the execution and attestation of a last will and testament, and you are satisfied that said Exhibit A, with or without said codicil, was so executed by said Joseph N. Cooper, and duly attested and witnessed, and that said instrument, Exhibit A, with or without said codicil, was in form

duly executed by said Joseph N. Cooper, and by him declared to be his last will and testament, all as explained by the preceding instructions, then it is incumbent on contestants to prove their propositions included in their said objections 1 to 12, inclusive, by a preponderance of the evidence, as hereinafter explained to you. By the expression 'preponderance of the evidence' is meant the greater weight and value of the evidence, and not necessarily the greater number of witnesses who may testify upon the one side of the case or upon the other side, or to or against any given fact or state of facts.''

The pleading upon which the foregoing instructions were predicated was Paragraph 10 of contestants' objections, as follows:

''That neither the said alleged will nor alleged codicil was executed in the manner and form required by statute by the alleged testator, Joseph N. Cooper.''

All other objections by contestants were affirmative in form, and charged mental incapacity and undue influence. The will and codicil were formally proved by the attesting witnesses. They were in all respects sufficient in ''manner and form,'' as required by statute. The evidence of the attesting witnesses as to the circumstances of the execution of the will was not disputed. Under the undisputed evidence, and upon the face of the instruments, the court should have instructed the jury that the instruments in question were executed in due manner and form. The court did charge, in Instruction V, that the law presumed the sanity of the testator. This was correct; and being so, there was no warrant for charging the jury that the burden was upon the proponents to establish these facts ''to the entire satisfaction of the jury;'' much less was there occasion for instructing the jury to find whether such instrument ''was executed in full compliance with the law governing the execution and attestation of a last will and testament.'' If it were made to appear that the verdict rendered was predicated upon these quoted instructions, the verdict could not stand, under the evidence in the record; and this is a sufficient reason for saying that the instruction ought not to have been given at all. Under the law, there was no burden upon the proponents to establish the mental soundness of the testator. The burden to

establish the contrary was at all times upon the contestants. *Kerkhoff v. Monkemeier,* 188 Iowa 103; *Ross v. Ross,* 140 Iowa 51; *Hull v. Hull,* 117 Iowa 738. The error at this point was emphasized by the refusal of the court to give Requested Instruction No. VII, which embodied the rule announced in the foregoing authorities.

III. The following excerpts from other instructions announce propositions of law that carry manifest error upon their face. Instruction XII contains the following:

3. WILLS: contests: erroneous instructions. "A will proved to have been executed and attested as prescribed by law, will be presumed to have been made by a person of sound mind; but if testimony is introduced which counterbalances that presumption, the party seeking to support such will must show by affirmative evidence that the testator was of sound mind when he executed the will."

Instruction XXIII contained the following:

"A testator is not of sound mind when, by reason of his infirmities, from whatever cause: (1) He is not in full possession of his faculties; (2) or * * *; (3) or * * *"

Instruction XXXI contained the following:

"The jury are instructed that, if a testator is aged, and has an impaired mind and memory, although such testator may not legally be incompetent to make a will, yet a will of such person *ought not to be sustained* unless it appears that such *disposition of property has been fairly made,* to have emanated from a free will, without the interposition of others, and to *accord with intentions previously expressed or implied from family relations.*"

The foregoing is a sufficient indication of the more serious errors in the record. The character of these errors permeates the entire record. Appellants press upon us the point that there was insufficient evidence to warrant a submission of the case to the jury. For reasons indicated later, the printed record before us is not in a condition to justify our undertaking to pass on that question, and we express no opinion thereon.

IV. Appellees have filed a motion to strike the argument of appellants, for want of compliance with the rules. It must be conceded that appellants' argument does not conform to our

**4. APPEAL AND ERROR: argument: penalizing disregard of rules.**

rules, and that it is subject to substantial criticism. We are slow, however, to strike an argument at any time where there appears to be a good-faith attempt to meet the requirements of the rules. We deem it more appropriate, in such a case, to impose penalties in the way of taxation of costs. That counsel for appellants have attempted to comply with their conception of the rules we have no doubt, though their conception thereof has been very erroneous, and their presentation of the case has been unnecessarily burdensome to us. Without any statement of facts or general outline thereof, the argument presents an assignment of errors covering 168 printed pages. These are all repeated under the head of "Brief Points," to which an additional 132 printed pages are devoted. If such a form of argument were desirable at any time, it could be so only with the help of a carefully prepared index. Such an extensive assignment of errors results quite unavoidably in the inclusion of much that ought to be omitted. For instance, it appears herein that, at the January term, 1920, the trial court granted a continuance, upon motion of the contestants, and over the objection of the proponents. Error has been assigned upon that ruling upon this appeal. This motion and the resistance thereto and the amendment thereto and the affidavits and the counter-affidavits have been set out in full in the abstract, covering approximately 20 printed pages. In the brief, error has been assigned thereon and argued. If the learned counsel had reflected very little, it would have occurred to them that, even if the order of the court were erroneous, it was past the help of appellate review. The continuance became an accomplished fact by mere lapse of time, and had become such long before the trial of the case had occurred. If we could hold the order to have been erroneous when made, it could not be a ground for reversing the case on this appeal.

We do not overlook that appellants' ultimate grievance was that, at the succeeding term of court, they moved for a continuance, and did not obtain it. Error is assigned upon this ruling. As a makeweight in support of this assignment of error, appellants bring forward the alleged erroneous order granting a continuance to the contestants at the preceding term. It is not

available to the appellants, as such. If the appellants were entitled to a continuance, as prayed, at the April term, they were so entitled to it regardless of the previous error, if any, in granting a continuance to the contestants. If appellants were not entitled to such continuance on the merits of their own application, they were not entitled to it because of error at a previous term.

The foregoing is perhaps a sufficient indication of the dragnet character of appellants' presentation of the appeal. It is our conclusion that it is proper and sufficient that appellants be taxed with the costs of printing their own briefs and 20 pages of the abstract. The motion to strike is otherwise overruled.

For the reasons indicated in the preceding divisions hereof, the judgment below is reversed, and the cause remanded.—*Reversed and remanded.*

Preston, C. J., Arthur and Faville, JJ., concur.