IN RE ESTATE OF CENA LEWMAN.

E. J. THORNTON, Executor, Appellee, v. MAUDE SELDERS, Appellant.

No. 47151.

(Reported in 30 N. W. 2d 737)

564

FEBRUARY 10, 1948.

REHEARING DENIED APRIL 9, 1948.

Stephens, Thornell & Millhone, of Clarinda, and Jones, Cambridge & Carl, of Atlantic, for appellant.

Paul W. Richards, of Red Oak, and Rudolph & Rudolph and Dalton & Dalton, all of Atlantic, for appellee.

HAYS, J.—This case comes here on an appeal from a judgment of the trial court admitting a will to probate. Appellant filed objections to the probate thereof, alleging mental incapacity to make a will and that at the time the will was executed testatrix did not know the contents thereof. There was a trial to a jury. At the close of all the testimony, the trial court sustained a motion by proponent for a directed verdict and contestant appeals.

Proponent, by the attesting witnesses, established the due execution of the instrument, offered the same in evidence as the last will of decedent, and rested. Contestant then offered her evidence. While mental incapacity is alleged, no evidence of any substantial value was offered upon this question.

The record shows that decedent, an elderly person, is survived by her husband and a daughter, the contestant. Under the will all real estate consisting of the home was given to one E. J. Thornton, who is a brother of decedent. The personal property was to be used for the support of the surviving spouse, N. J. Lewman. Upon the death of both decedent and her husband, the personal property remaining is to be distributed. Contestant is to have five hundred dollars, and the balance, if any, is to

go to decedent's grandson, a son of contestant, in monthly payments.

Some time prior to the date of the execution of the will, decedent requested one C. J. Hornsby to draw her will. He refused. Decedent then told Hornsby how she wanted her will and asked that he have Judge Richards prepare the will. Sometime later Hornsby received the blank instrument from Judge Richards and delivered it to decedent telling her to look it over and be sure it was what she wanted. A month later, at her request, three acquaintances, designated by her, went to her home. She brought the instrument from another room, signed it and asked the three to witness her signature which they did.

The record shows that decedent in recent years suffered headaches and was not in good health. She had impaired eyesight and had ceased to read the papers and other written or printed matter. She would ask that they be read to her. She formerly sewed but became unable to thread the needle. Both contestant and her husband gave rather detailed statements, based on observation, as to her health, activities and impaired eyesight. They were asked if, based upon observation, they knew whether or not decedent could read a newspaper or typewriting. An objection to these questions being sustained, contestant offered to prove that the answer to the questions would be that "she could not." While the above statement of the record is rather brief, we feel it is sufficient to properly present the questions involved on this appeal.

Appellant urges two propositions as a basis for a reversal: (1) That the directing of a verdict was error because testatrix being unable to see that the will properly expressed her wishes, an additional burden rested upon proponent to show that testatrix actually knew the contents thereof—this burden being in addition to proving the due execution of the will. (2) That the court erred in rejecting the proffered testimony of contestant and her husband that testatrix could not read newsprint or typewriting.

I. Was the offered testimony admissible? We hold that it was. The rule is too well established to require the citing of authority that "while these answers [in question] are in the nature of conclusions, they relate to matters which

could not well have been reproduced or described to the jury precisely as they appeared to the witness, and for this reason, under a well-established rule, were permissible." See, however, Vannest v. Murphy, 135 Iowa 123, 112 N. W. 236; Dolan v. Henry, 189 Iowa 104, 177 N. W. 712; Looney v. Parker, 210 Iowa 85, 230 N. W. 570; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N. W. 2d 120. The effect of this error in refusing this offered testimony will be considered under appellant's other assigned error.

■ II. Did the trial court commit error in directing a verdict? This question involves two propositions. One is legal, the other factual. The legal question involves the matter of burden of proof generally in this type of litigation. The rule is well settled in Iowa to the effect that, "if the will was executed according to the formalities required by law, the presumption in the first instance is that it was read to testator, or that he was otherwise acquainted with its provisions." This general rule is not questioned by appellant. However, appellant contends that where impaired eyesight of testator shows that he cannot read, then the burden shifts to proponent.

■ The rule adopted in many states appears to be:

"The blindness of the testator overthrows the presumption otherwise arising from the due execution of a will that the testator knew its contents, and casts on the proponent the burden of establishing that fact." Annotations 9 A. L. R. 1416; 37 A. L. R. 603. Iowa does not follow this rule.

In the case of Ross v. Ross, 140 Iowa 51, 58, 117 N. W. 1105, 1108, this question is definitely answered, as follows:

"The only question left * * * is, does the fact of testator's impairment of sight change the rule? Both reason and authority call for a negative answer * * *. It was undoubtedly competent for contestants to show defective eyesight, or any other mental or physical impairment, as bearing upon the issues of mental incapacity, fraud, and undue influence, and for the purpose of showing that decedent did not know or understand the contents of the instrument he was signing as and for a last will and testament * * *. But as bearing upon the matters

which proponents were required to establish to make out a prima facie case, this impairment of the sense of sight was not important, nor does this fact change the rule as to the burden of proof. If the will was executed according to the formalities required by law, the presumption in the first instance is that it was read to testator, or that he was otherwise acquainted with its provisions."

See, also, Philpott v. Jones, 164 Iowa 730, 146 N. W. 859; In re Estate of Cooper, 196 Iowa 116, 194 N. W. 218; In re Estate of Koll, 200 Iowa 1122, 206 N. W. 40.

This court has however adopted a rule which may appear to be somewhat of a modification of the above rule, and it is upon this modified rule that appellant relies. In the case of In re Estate of Younggren, 226 Iowa 1377, 1384, 1385, 286 N. W. 467, 470, we announce the following rule, citing and quoting from 28 R. C. L. 151, section 105, as follows:

" '* * * whenever a testator, by reason of physical or educational disability, as by blindness or by inability to read the language in which the will is written, is unable by the exercise of his own faculties to see for himself that the will expresses his testamentary desires, an additional burden of proving that the testator was acquainted with the provisions of the will is imposed upon the proponents of the will *if there are any circumstances which lead the court to suspect that he may have been imposed upon.*' "

Under the facts in that case the court found a conflict in the evidence as to whether testatrix understood the English language so as to know the contents of the will. The facts attending the drawing of the will are vague with the one who knew most about it, the principal beneficiary remaining silent. The court further says:

"Two trial courts heard and saw the witnesses. Much depends on the credibility of these witnesses. We are of the opinion that the care and vigilance exercised by the lower court should have our approval."

In the case of In re Estate of Rogers, 229 Iowa 781, 295 N. W. 103, undue influence was the ground alleged by con-

testant. It was conceded that testator's eyesight was so impaired that he could not read the will and that he was very much dependent on his niece, principal beneficiary in the alleged will; that the niece took the will to testator to be signed. There was a dispute as to whether the will had been read to testator. There was evidence tending to show that testator had intended his property to go to a grandson. Under this situation, the trial court found evidence of undue influence to make a jury question, and refers to the rule announced in the Younggren case, supra.

We do not question the soundness of the rule announced in these cases. We are somewhat in doubt as to whether they even modify the rule announced in the Ross case, supra. We are satisfied, however, that they do not benefit contestant herein. The thing that made a jury question in the two cited cases was not the impaired eyesight, but the existence of other facts which, in connection with the inability to see or read, created the "circumstances" referred to therein.

In the instant case, few if any suspicious circumstances exist. The decedent directed the drawing of the will. She had it in her possession a month before it was signed. The signature thereon does not appear to have been written by one with greatly impaired eyesight. She stated the will was correct and asked that her signature be witnessed. The principal beneficiary, her brother, does not appear to have had any part therein. We think the case comes under the rule announced in the Ross case, supra.

The final question on this claimed error in directing a verdict is, What is the effect of the erroneous rejection of the evidence discussed under Division I hereof? As above stated, the impaired eyesight is not the thing that places the additional burden on proponents. It is the existence of other facts taken in connection with the impairment. We have held, above, that such facts do not exist.

Assuming that this rejected testimony was in the record, it would only establish, at best, that decedent could not read the will. As the record stands, there is sufficient testimony on which a jury might so find. It is the established rule in this

state that "the exclusion of admissible evidence which could not, if received, have changed the result is harmless error." See Kuhl v. Chamberlain, 140 Iowa 546, 118 N. W. 776, 21 L. R. A., N. S., 766; Potter v. Robinson, 233 Iowa 479, 9 N. W. 2d 457; Elder v. Brown, 203 Iowa 1124, 212 N. W. 147; In re Estate of Workman, 174 Iowa 222, 156 N. W. 438.

Finding no prejudicial error the judgment of the trial court is correct and should be affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, MANTZ, and SMITH, JJ., concur.