Carol Rutten, appellee, v. Investors Life Insurance Company of Iowa, appellant.

No. 51922.

(Reported in 140 N.W.2d 101)

FEBRUARY 8, 1966.

Dull & Dull, of Le Mars, for appellant.

Burton Parriott, of Remsen, for appellee.

BECKER, J.—Plaintiff brings action to collect the proceeds of a Level Term Life insurance policy on the life of her deceased husband. On June 7, 1963, Clarence Rutten made application for

the policy from the defendant, Investors Life Insurance Company of Iowa. The application was accepted and premiums paid. The decedent died of cancer on September 8, 1963. First beneficiary, First National Bank of Le Mars, hereinafter referred to as the bank, has assigned its interest to second beneficiary, plaintiff Mrs. Rutten, deceased's widow, who made proof of loss and application for the payment of the policy, which was denied. Plaintiff's cause was tried to a jury, at the close of all of the evidence the court directed a verdict in favor of the plaintiff and against the defendant. From such action the defendant appeals.

The brief application for insurance was treated as the policy by all concerned. It contained no questions as to health, age or other such inquiries usually found in life insurance applications, except the following statement: "I hereby certify that I am less than sixty-five years of age and to the best of my knowledge, I am in a state of good health and I have never had any heart ailment, high blood pressure, diabetes, or any malignant (cancer) condition."

Plaintiff's testimony established that during the year 1963 the decedent had been doing business with the bank. Mr. Rutten borrowed from the bank in late December 1962. On June 7, 1963, he increased his loan by $4000 to purchase a transfer business, simultaneously making application for the $2500 policy in dispute. Mr. Maser, president of the bank, also agent for Investors Life Insurance Company of Iowa, took the application for a three-year Level Term Life policy calling for a $150 premium, noting that the premium constitutes two percent per annum of the face amount of the policy. The purpose of the policy was the protection of the bank for the loan. The real party in interest was the second beneficiary, Mrs. Clarence Rutten. The application was signed by Mr. Maser, as authorized agent for defendant-company, and by Mr. Rutten as applicant. After the death of Mr. Rutten, Mr. Maser obtained a death certificate which he forwarded to the company, but the company declined to pay the proceeds due under this policy.

Mrs. Rutten testified that her husband was 23 years of age when he died on September 8, 1963, of cancer, the death proceeds were never paid to her, she was the sole owner of the policy,

the first time she learned that her husband was seriously ill was on June 16, 1963. Plaintiff then rested.

Defendant's witness Schimm testified that on October 15, 1963, he interviewed Mrs. Rutten, explaining that he was investigating her husband's death and obtained a signed statement from Mrs. Rutten which was admitted in evidence as Exhibit A. It states:

"My husband died on September 8, 1963, at Sacred Heart hospital. He was being treated by Doctors Christensen, George and Aydt. He first became ill June 16, 1963, at about 3:00 in the morning. He was taken to the Sacred Heart hospital at about 4:00 in the morning. He had severe stomach pains. He was operated on about 7:30 that same morning. He had worked all day and we went out for supper and a dance.

"About 6 weeks before he had what we thought was the flu. He saw the same doctors and was given some pills to take. He was off work a day or two at that time. He was not hospitalized. Prior to this he had no previous illness or operations. Had never been hospitalized before."

Mr. Schimm also explained to Mrs. Rutten that the company wanted a signed statement pertaining to her husband's death and medical treatment as standard procedure in handling the investigation of the death claim. Mrs. Rutten signed Exhibit B which was admitted in evidence and reads:

"I hereby authorize and request any physician, hospital or association to disclose to, furnish copy of, or permit bearer to view or to copy, record information in connection with any past or present illness, treatment or prescription of: Clarence Joseph Rutten in behalf of the Investors Life Insurance Co. of Iowa— Insurance Company. I am willing that a photostat of this authorization be accepted with the same authority as the original."

Mr. Schimm then testified that he interviewed Dr. George and secured a signed Physician's Statement from him for the purpose of securing information regarding all previous treatments pertaining to Mr. Rutten. This statement was offered in evidence as Exhibit C. Plaintiff's objection to the exhibit was sustained on the grounds of hearsay, transactions and communications be-

tween doctor and patient which are privileged, that the privilege had not been waived, and that the evidence was incompetent, irrelevant and immaterial.

An offer of proof was made as to Mr. Schimm that if allowed he would testify that on October 15, 1963, Mrs. Rutten told him that prior to June 7, 1963, the date of the application for insurance, her husband was under doctor's care, that he visited Doctor Aydt on several occasions and he was at that time taking medication; that Mr. Schimm fully explained the significance of the authorization to release medical information to Mrs. Rutten; that he took a signed statement from Doctor George of the medical association of Doctors Christensen, George and Aydt, of Remsen, Iowa. The proffer included the entire material on the signed statement. The material parts seem to be that Doctor George first saw decedent June 16, 1963; patient complained of severe pain in abdomen, nausea and vomiting, diagnosis was peritonitis prior to operation, an exploratory laparotomy-colostomy was performed the same date, plus the following:

"Q. 9. Have you previously treated patient for this or any other condition? Please give dates and details. A. Dr. Aydt saw him. March, Cold—sore throat, and also saw him May 20, 1963, for pus cells in urine. Put on Terramycin. Seen two days later and burning on urinating was his complaint. Also seen on May 27th. Improvement. Some pain in bladder area. Not seen again until June 16, 1963."

Upon objection by plaintiff the proffer was ruled inadmissible on the ground of privilege, incompetency, irrelevancy, immateriality, hearsay and not the best evidence. Whereupon defendant offered to call Doctor George, but the court stated that he would not allow Doctor George to testify.

Defendant assigns five errors in this case; the exclusion of the testimony of Mr. Maser, the exclusion of the testimony of Mr. Schimm, the exclusion of defendant's Exhibit C, the medical report, the exclusion of the testimony of Doctor George and the failure to sustain a motion for a new trial based on the foregoing objections.

I. The life insurance policy in question is apparently specifically designed to be used with credit transactions. It is not

predicated upon the age of the applicant, the certification is simply made that the applicant is less than 65 years old. The record indicates that the premiums were not based on age, health or mortality tables, but on a percentage of the face amount of the policy. The only reference to insured's health required no more than an opinion by insured that he was then in good health. The application contained none of the usual questions as to whether the applicant had been sick during any given period in the past, did not seek to ascertain whether the applicant had consulted any doctors during any given period of time, and if so, the names of the doctors. It generally sought no information whatsoever in relation to the background of the applicant.

"Where statements in the application are stated to be true to the applicant's best information and belief, it would be necessary for the insurer, seeking to avoid liability, to show not only that such statements were false, but that the insured knew them to be false or made the statements fraudulently and with intent to deceive." Appleman, Insurance Law and Practice, Volume 12, section 7300, page 418; 45 C. J. S., Insurance, section 473(4), page 176, citing Olson v. Southern Surety Co., 201 Iowa 1334, 208 N.W. 213.

II. To meet this burden defendant-insurer offered to prove by the testimony of Mr. Maser that on December 31, 1962, the decedent borrowed $6000 from the bank which was covered, with interest, by a $7500 decreasing term life insurance policy, at that time decedent was told the difference between the non-medical and medical life insurance policy, the limit for non-medical was $10,000 and required no more than a statement of good health as shown on the application, Exhibit 1; subsequently on June 7, 1963, when decedent borrowed $4000 he made application for $2500 of level term life insurance, thus keeping himself within the limit. Defendant stated its position that the state of mind of the insured as to his present state of health on June 7 was subject to question as a result of the aforementioned circumstances, and the fact that Mr. Rutten knew that any application for life insurance in excess of $10,000 would require additional medical information is material relative to the determination of the state of mind as to whether he was in good health

at the time he signed the application. Mr. Maser was not produced, but defendant had been stopped from eliciting such evidence from him on cross-examination. Under such circumstances we do not consider the failure to actually produce Mr. Maser in court again to be material.

Plaintiff's counsel objected to the foregoing offer of proof as incompetent, irrelevant and immaterial. The court sustained the objection on the grounds that it was incompetent.

If witness Maser testified that he had explained the underwriting rules to insured as indicated a little over six months prior to the application in question, and if the jury believed this testimony and believed the insured remembered these rules at the time of his application, this would be a competent and relevant circumstance tending to prove the insured's state of mind at the time the application was made. The evidence offered was improperly excluded.

■ III. The evidence contained in the offer of proof in relation to a claimed statement by Mrs. Rutten to Mr. Schimm that prior to June 7, 1963, the date of the application for insurance, her husband was under doctor's care, that he visited Doctor Aydt on several occasions, and he was at that time taking medication, was also erroneously excluded. If this evidence had been produced as offered it would clearly be an admission against interest. As such it was admissible. See Bash v. Hade, 245 Iowa 332, 62 N.W.2d 180.

IV. Defendant argues that failure to allow Mr. Schimm to relate his explanation to the beneficiary, concerning the purpose of the medical authorization admitted as Exhibit B and signed by her, was error because this evidence would lay the foundation for introduction of Exhibit C as an admission by plaintiff-beneficiary. The offer was, "that upon the request of Mr. Schimm, and after Mr. Schimm had fully explained the significance of an authorization to release medical information, which authorization is in evidence and marked Defendant's Exhibit B, Mrs. Rutten did sign said authorization; * * *."

■ "An offer of evidence tending to defeat recovery should be of facts clear and distinct in their character, and not of doubtful or uncertain import." 53 Am. Jur., Trial, section 102, page

91. For exhaustive note on this subject see 89 A. L. R.2d 279, 311, 319.

 Defendant did not detail what he meant by "fully explained the significance of an authorization to release medical information." How such detailed oral explanation could change a written authorization into a written admission against interest does not appear. It was incumbent upon defendant in his proffer to supply sufficient details regarding such explanation to allow an intelligent judgment on admissibility. If there was further evidence relating to the conversation, other than mere conclusion "fully explained the significance of the authorization", it should have been included in reasonably specific form. There was no error in this regard.

 V. We next consider the exclusion of defendant's Exhibit C, the signed statement from Doctor George. Plaintiff objected to the introduction of this exhibit on the grounds that it was hearsay and privileged. Both objections were good. This statement re Doctor Aydt's findings was clearly hearsay and, as such, inadmissible unless it came within one of the recognized exceptions. None is suggested.

The consent of assured or the beneficiary that the doctor may reveal the condition of the assured to the insurance company for the purpose of satisfying the company rules does not constitute a waiver of the privileged nature of confidential communications under section 622.10, Code, 1962.

"In many opinions we have held this statute should receive a liberal construction designed to carry out its manifest purpose to make consultation by a patient with his physician entirely confidential and free from anticipation or fear that this confidence will be broken by the examination of the physician as a witness in some legal proceeding." Howard v. Porter, 240 Iowa 153, 155, 35 N.W.2d 837.

"The plaintiff's willingness to allow any physician that had ever treated him to give information within his knowledge as to plaintiff's past or present physical condition should not be construed as a consent that said physicians might testify to such information against the plaintiff in an action to recover on the policy. Such an interpretation of the language used would vio-

late the rule that doubtful provisions should be construed in favor of the insured." Moutzoukos v. Mutual Benefit Health & Accident, 69 Utah 309, 321, 254 P. 1005, 1010, quoted with approval in Noble v. United Benefit Life Ins. Co., 230 Iowa 471, 476, 297 N.W. 881.

Defendant relies strongly on Nelson v. Nederland Life Insurance Co., 110 Iowa 600, 606, 81 N.W. 807, 809. In that case the beneficiary secured the physician's statement herself and forwarded it to the company as part of the Proof of Loss. The statement was then held admissible as an admission against interest. Such is not the case here. Here there is only an authorization to allow the company to make its own inquiries. Plaintiff is not bound by the results of such inquiries, nor did she waive the privilege in connection therewith.

Nelson v. Nederland Life Insurance Co., supra, clearly recognized this distinction. "It is 'in giving testimony' in a judicial proceeding that such disclosures are prohibited by statute, and doubtless this may no more be done by affidavit than orally. But here the information ascertained professionally had been revealed in an affidavit, not for use in such a proceeding, and it was not offered nor received as evidence of the physician, or of what he said, as in that event it would have been incompetent, but as an admission by the plaintiff that its contents were true." Authorization does not constitute admission.

VI. Defendant made a separate offer of proof as to Doctor George. When the court had ruled that Exhibit C was inadmissible defendant stated: "I am going to call Dr. George then, and bring him up here to testify." The court stated: "I am not going to let Doctor George testify." Defendant's counsel stated that he was attempting to meet the objections that the Physician's Statement was not the best evidence, and *that if called Doctor George would testify in substance in accordance with answers given to the witness Schimm in the Physician's Statement that was taken on October 15, 1963.* The court properly denied this offer of proof.

■ Defendant now urges that he should have at least been able to call Doctor George to testify that he had treated the decedent on the dates indicated, as distinguished from testimony

as to what the examination or conversation revealed. This court has said that testimony that the physician attended a person and prescribed involves no disclosure of information obtained professionally. Cross v. Equitable Life Assurance Society, 228 Iowa 800, 806, 293 N.W. 464. Defendant did not state that this was his purpose in calling Doctor George. In fact his offer of proof negatived such purpose. Further, it was Doctor George's associates who treated insured prior to the application, not Doctor George. No offer was made as to how Doctor George received this knowledge. If the offer had been made as to the actual before application treating physician and the limited purpose made known to the court, the court would undoubtedly have viewed the proffer in a different light.

██ ██ VII. The errors in exclusion of evidence discussed in Divisions II and III require reversal. In considering errors assigned in relation to rulings on direct examination, we examine the questions, objections and rulings, together with similar evidence elsewhere admitted, to determine whether the rulings are prejudicial. Trachta v. Iowa State Highway Commission, 249 Iowa 374, 86 N.W.2d 849, 856. However, when error appears prejudice will be presumed, until the contrary affirmatively appears. Olson v. Olson, 242 Iowa 192, 205, 46 N.W.2d 1, 40 A. L. R.2d 1, and cases cited therein. We should also note the rule that "the exclusion of admissible evidence which could not, if received, have changed the result is harmless error." In re Estate of Lewman, 239 Iowa 563, 568, 30 N.W.2d 737, Goodman v. Gonse, 247 Iowa 1091, 76 N.W.2d 873.

With these rules established we must hold that the exclusions referred to were prejudicial. The comment of this court in McNamara v. Corporation of New Melleray, 88 Iowa 502, 507, 55 N.W. 322, is applicable here. "We do not know whether the plaintiff would have succeeded in making such a case as the court should have submitted to the jury if he had been permitted to introduce the evidence which was improperly excluded. We cannot tell to what extent, if at all, the ruling out of this material evidence prevented him from establishing the facts necessary to his recovery. It frequently happens that when material and competent testimony is ruled out, it prevents the party from

introducing other proper evidence. We are not unmindful of the rule that great latitude is allowed the trial court as to the order of introducing testimony; and this should be so, to the end that business may be facilitated; but in this case there was no suggestion from the court that counsel for the plaintiff should introduce his testimony in any certain order, or that the offered testimony would be proper at some other stage of the case, or when some other fact had been established. We think, when competent and material testimony is thus ruled out, it will not do to say that it is without prejudice, because plaintiff failed to make a case, for it is impossible for anyone to say, if the testimony improperly excluded had been admitted, and possibly other evidence depending upon it, whether the plaintiff would have made a case entitling him to go to a jury or not. The rule is that, when errors appear, prejudice is presumed to result therefrom; and it cannot be disregarded, unless from the record it appears that the error has worked no prejudice to the objecting party. We cannot say that such is the case [citing cases]. We think the case should be tried again, when the plaintiff may have an opportunity to present his evidence which is competent, relevant and material."

These observations are apropos to the case at bar. A new trial should have been granted.—Reversed and remanded for retrial.

All JUSTICES concur.