## Chicago City Railway Company, Appellee, v. Rothschild & Company and John Griffiths et al., trading as John Griffiths & Son, Appellants.

### Gen. No. 24,121.

1. PLEADING, § 476*—*when declaration sufficient after verdict.* In an action to recover for the subsidence of a street resulting in damage to a street railway company, caused by excavation for a building in course of construction, an allegation that in making the excavation the support of the soil in the remaining portion of the street was removed, is sufficient after verdict as including not only the removal of supporting soil but percolating water as well.

2. APPEAL AND ERROR, § 512*—*when objection to hypothetical question too late.* Objection that hypothetical questions assumed facts not in evidence cannot be made for the first time on appeal.

3. EVIDENCE, § 437*—*what evidence sufficient basis for hypothetical questions.* Evidence of defendants' superintendent on direct examination *held* sufficient basis for assumptions in plaintiff's hypothetical questions although in conflict with his testimony on cross-examination.

4. ADJOINING LANDOWNERS, § 1*—*when doctrine of lateral support applicable.* A claim that the doctrine of lateral support has no application where the subsiding property was filled land is untenable where the adjacent property was on a level with the land as filled.

5. ADJOINING LANDOWNERS, § 1*—*when shown that depression in street due partly to removal of soil from under street.* In an action for removal of lateral support, causing subsidence of a public street and causing damage to a street railway operating in the street, evidence *held* sufficient to show that the removal of soil from under the street was at least in part the cause of the subsidence, and that it was not wholly due to the withdrawal of subsurface percolating waters.

6. ADJOINING LANDOWNERS, § 1*—*when abutting owner liable for damages for depression in street due to excavation.* An abutting property owner who, by reason of excavation on his own property, causes a street to be depressed is liable for the resulting damages, whether such liability extends to a depression caused solely by the removal of subterranean percolating waters not decided.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Chicago City Ry. Co. v. Rothschild & Co. et al., 213 Ill. App. 178.

BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed January 29, 1919. Rehearing denied February 10, 1919.

EVERETT & McGONIGLE and WINSTON, STRAWN & SHAW, for appellants; JOHN C. EVERETT and EDWARD W. EVERETT, of counsel.

HARRY P. WEBER, GEORGE W. MILLER and ARTHUR J. DONOVAN, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

The Chicago City Railway Company brought this action in trespass on the case against Rothschild & Company, a corporation, and John Griffiths and George W. Griffiths, copartners, doing business under the name of John Griffiths & Son, to recover the expense incurred by plaintiff in restoring its track and that part of the street in which its tracks were laid. There was a finding and judgment in plaintiff's favor for $2,592.44, to reverse which defendants prosecute this appeal.

The record discloses that plaintiff by virtue of an ordinance operates a double-track street railway in State and Van Buren streets, Chicago; that State street extends north and south and is intersected at right angles by Van Buren street; that the ordinance required plaintiff to fill, pave and keep in repair 16 feet of the center of the roadway of State and Van Buren streets occupied by its tracks; that while such portions of the streets were in good condition and repair, the defendant Rothschild & Company, lessee of the land situate at the northeast corner of State and Van Buren streets, entered into a contract with the defendants John Griffiths & Son, whereby the latter were to take down an old store building located on the property and construct a new one; that the property has a frontage of 280 feet on State street and 156

feet on Van Buren street; that the building was to be used as a retail store and was to be nine stories above the ground and two below. The building was to be placed on caisson foundations, most of which went down about 100 feet to bedrock. It is claimed by plaintiff that the excavations for the basement and subbasement and the wells for the caissons caused the surface of the streets to subside, thereby damaging the plaintiff's property, and to repair such damage plaintiff was required to spend considerable money, to recover which this suit is brought.

There is no dispute but that the excavation for the construction of the building caused the streets to subside, and that the damage resulted from it. *Prima facie*, the defendants had no right to do this, and therefore it is for them to justify their conduct if they can. They attempted to do this by saying that the subsidence of the streets was caused solely by the withdrawal of percolating water from beneath the surface of the streets, and it is claimed that in such case the defendants are not liable where the work was done without negligence, and that in the instant case there is no claim that they were negligent in the work.

The evidence shows without dispute that Rothschild & Company entered into a contract with the George A. Fuller Company to sink caissons under the north half of the building. There were nine rows of caissons running parallel with State street under this section of the building—nine caissons in each row. Rothschild & Company was authorized by the city to use the subsidewalk space under State and Van Buren streets. This space was 19 feet 10 inches wide on State street and 14 feet 1 inch wide on Van Buren street. The caissons east of the State street curb line, except the ones in the north line of the property, were 6 feet in diameter; those along the north line were 12 feet in diameter, due to the fact that they support not only the Rothschild building, but the one immediately north. All of these caissons go down to bedrock, ap-

proximately 100 feet, except those in the curb line, which go down about 74 feet to the second layer of hard pan and are about 4 feet in diameter. The Fuller Company dug the wells and put in the caissons under the north half of the building and did some excavation of the basement. Then that section of the old building was razed, the north section of the new building was erected, and subsequently the same method was followed in the south section. The only work done by the Fuller Company was the construction of the caissons and some excavation under the north section. The sinking of the caissons under the south section, the razing of the old building and the construction of the new one were all done by the defendants John Griffiths & Son. Under the old building, including the subsidewalk space, there was a basement about 10 feet in depth, while under the new building there was a basement about 17 feet deep and a subbasement about 14 feet deep, which of course required considerable excavation work. Along the curb, when the old building was standing, there was a curb about 33 feet deep and a new curb wall built, which wall. This wall was removed and a trench 4 feet in width was dug to the bottom of the subbasement, rested on the first row of caissons.

About the time the Fuller Company had completed the caissons under the north section, it was noticed that the roadway of the street opposite that section began to be somewhat depressed. As the work was completed the roadway was depressed opposite the south section in State and Van Buren streets. The greatest depression in State street was along the curb line and about the middle of the building. It commenced north of the Rothschild building and extended south in Van Buren street and west in State street on ascending grade to the west street car track. The depression in Van Buren street was similar to that in State street. No damages were allowed by reason of the excavation under the north section of the building.

In sinking the circular wells for the caissons the workmen used spades, shovels and picks, depending on the character of the soil. After digging about 4 feet deep, the well would be curbed with tongued and grooved lagging placed on the inside. This method was pursued until the well was completed. When water was encountered it was shoveled into buckets and sometimes a pump was used.

The defendants contend that the charge made in the declaration is that the streets subsided by reason of the excavation under the sidewalks and the sinking of the caissons; that this excavation caused the withdrawal of soil from under the street and not the withdrawal of water, and therefore it was incumbent on the plaintiff to prove the matters alleged; and that if the proof showed that water was withdrawn from beneath the street and not solid matter, plaintiff had failed. We think the declaration will not warrant such a construction. It is averred that John W. Griffiths & Son undertook the work and did sink caissons, but it is not averred that this was under the building or in the sidewalk space; that they did excavate in State and Van Buren streets under the sidewalk, and by reason thereof and the removal of the soil from the streets, the soil under the remaining portions of the streets was interfered with, and the support thereof removed and the soil in the streets depressed. There is no averment that soil or water was removed from under the remaining portions of the street, but the averment is that, by the digging of the caissons and the excavation, the *support* of the soil in the remaining portions of the streets was removed. This allegation was sufficient to include both soil and water, or either, and is sufficient after verdict. Moreover, on the trial plaintiff introduced, without objection, evidence showing the digging of the wells under the building, the excavation in the basement and sub-basement, and under the sidewalk, and no objection was made that this was not competent under the dec-

laration. The only reason it would be incompetent was on the ground of variance, and this should have been specifically pointed out so that the variance could have been cured. *Ainslie v. Biggs,* 211 Ill. App. 463.

The defendants' next point is that the depression of the roadways of the streets was caused solely by the withdrawal of percolating subsurface waters, and as the work which defendants did was lawful, the damages suffered by plaintiff are *damnum absque injuria.* We cannot concur with counsel's contention as to the facts, nor the law. The first witness called by the plaintiff was John C. Ruettinger, who was superintendent and general manager of the defendants John Griffiths & Son, and who supervised, generally, the construction of the work in question. On direct examination he testified that the old curb wall was removed in sections of about 3 feet in depth and about 20 feet in length; that this space was braced by lagging placed against the soil in the street, and that this process was repeated until the trench for the curb wall was completed. On cross-examination he testified that the old wall was removed in sections of about 4 feet square, and that this was braced with lagging. Plaintiff then called two witnesses who were familiar with the soil in the loop district in Chicago, and who testified as experts. In answer to hypothetical questions, they gave it as their opinions that the soil in the remaining portions of the street would slip and creep into the excavation and wells along the curb, and that this caused the depression. Counsel for defendants now contend that admission of this testimony was erroneous for the reason that the method of construction was not embraced in the questions asked; that the questions assumed that the old curb wall was taken down in sections 20 feet in length and 3 feet in height, while the evidence was that it was taken down in sections 4 feet square. This was not the objection made on the trial, and of course cannot be urged here. Moreover,

we think the questions were warranted by the direct testimony of their own superintendent, and that there was sufficient evidence to warrant the court in finding that some of the soil was withdrawn from under the roadway by reason of the excavations.

The defendants admit that where soil is withdrawn from the roadway in its natural condition by reason of excavations made by adjoining property owners, the latter are liable for damages caused thereby, and that this is true, although street cars are operated in the street, as this is not an additional servitude. But it is said that the undisputed evidence shows that the roadway in question was not in its natural state, but that there was a fill of some 12 or 15 feet made up of rubbish and other matter, and therefore the doctrine of lateral support does not apply. We think there is no merit in this point, as the evidence shows that the old building was on a level with the street as filled, and there is no showing that the property abutting on the street was not also filled to the same level.

But the defendants' main contention is that the depression was caused solely by the withdrawal of subsurface percolating waters and for this no recovery can be had. What we have said disposes of this contention on the facts adversely to the defendants. In support of the legal proposition, counsel cite *Popplewell v. Hodkinson,* L. R. 4 Exch. 248; *Jordeson v. Sutton, Southcoates & Drypool Gas Co.,* L. R. 2 Ch. (1899) 217; *New York Continental Jewel Filtration Co. v. Jones,* 37 App. Cas. (D. C.) 511; *Frazier v. Brown,* 12 Ohio St. 294; *Roath v. Driscoll,* 20 Conn. 533; *Chatfield v. Wilson,* 28 Vt. 49.

The *Popplewell* case, *supra,* was decided in 1869. There land of a wet and spongy character was conveyed for building purposes, some of it to the plaintiff and an adjoining portion to the defendant. Plaintiff built cottages on his land and on the adjoining portion a church was afterwards constructed. Before this could be done it was necessary to excavate, and in con-

Chicago City Ry. Co. v. Rothschild & Co. et al., 213 Ill. App. 178.

sequence of this plaintiff's wet and spongy land was drained and subsided. Plaintiff's land there would have subsided even if no buildings had been on it. There was no claim of negligence. In holding that no recovery could be had, the court there said (251): "Although there is no doubt that a man has no right to withdraw from his neighbor the support of adjacent soil, there is nothing at common law to prevent his draining that soil, if, for any reason, it becomes necessary or convenient for him to do so."

In the *Jordeson* case, *supra,* where suit was brought to recover damages by the owner of land against an adjoining owner, it was claimed that the latter had caused the former's land to subside and be damaged by reason of the construction of a gas plant immediately adjoining. There was no dispute about the facts, but the defendants claimed "that, even if that is so, they are not liable at common law for the damage by subsidence, because, first, they only pumped water from their own land. * * * The defendants say, in short, that the subsidence was caused by the withdrawal of underground water from the plaintiff's land by lawful pumping on their own land, and that, although damage to the plaintiff ensued, no nuisance or other actionable wrong was committed by them. For this they rely on *Popplewell v. Hodkinson.* The questions thus raised are extremely important and by no means free from difficulty." The court there held that under the evidence the removal of soil and sand caused the damages as well as the removal of water, and continuing said: "In this view of the evidence, it is unnecessary for me to decide whether, if the defendants had done nothing more than pump underground water from their own land and thereby let down the plaintiff's houses, an action could have been maintained against them. *Popplewell v. Hodkinson* looks like and has generally been regarded as an authority that no action will lie in such a case. But I am not satisfied that this broad question can be con-

sidered as finally settled by that or any other decision. The question involves very important considerations. Two conflicting rights have to be reconciled, namely, the right to support and the right to pump water. It is not necessary to decide which is to give way to the other. I leave the question where it is.''

In the *Jones* case, *supra,* Jones owned a piece of improved property upon a public street. The defendant was constructing a railroad tunnel under the street with legal authority to do so. The soil contained considerable percolating water. In excavating for the tunnel under the street, this water was drained from plaintiff's property and caused it to settle. It was held that no action would lie. The court cites the *Popplewell* case and *Chatfield v. Wilson, supra.* In the Ohio, Connecticut and Vermont cases, *supra,* the question of lateral support was in no way involved. It was there held that where the owner of adjoining land dug a hole or reservoir on his own land and thereby diverted percolating water from a neighbor's land, no recovery could be had. The only cases in point are the District of Columbia case and the *Popplewell* case, *supra,* and the reasoning of the latter seems to have been unsatisfactory to the later English court, as shown by the opinion in the *Jordeson* case, decided in 1899. Upon sound reason, it appears to us that where an abutting property owner, by reason of excavation, causes the street to be depressed, he should make good the damages. However, it is unnecessary for us to decide whether in such case the abutting property owner would be liable if the depression were caused solely by the withdrawal of subsurface percolating waters, and we leave that question where it is.

The judgment of the Circuit Court of Cook county is affirmed.

*Affirmed.*