No. 17,114.

WILLIAM E. RUSSELL COAL COMPANY *v.* BOARD OF
COUNTY COMMISSIONERS ET AL.
(270 P. [2d] 772)

Decided April 26, 1954. Rehearing denied May 24, 1954.

Messrs. PENDER, SHAFER & NEWCOMB, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, Mr. JOHN M. EVANS, Assistant, for defendant in error State Highway department.

Messrs. REYNOLDS & BROTZMAN, for defendant in error Board of County Commissioners.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

IN October of 1950 the Board of Commissioners of the County of Boulder and the State Highway Department of the State of Colorado, defendants in error, under constitutional and statutory authority, filed their petition in condemnation of certain parcels of land in connection with the establishment of the Denver-Boulder Turnpike Highway, and included therein was a parcel specified as No. 21-A containing 11.251 acres more or less, of which .972 acres are included in the right of way of the present road. This petition is based upon the customary grounds for condemnation in highway matters.

Plaintiff in error, hereinafter referred to as respondent, answered the petition alleging, inter alia, that it owned the surface of parcel 21-A, and had for many

years conducted coal mining operations thereunder as well as under surface of adjacent land pursuant to coal mining leases; that a part of the coal under 21-A had been removed, but large amounts of coal remained thereunder and adjacent thereto; that if this coal should be removed the surface would subside and render the highway useless, dangerous or impair the same for highway purposes; that it was necessary to leave the coal in place for approximately one hundred feet on each side thereof to support the surface and prevent such subsidence; that respondent would be damaged by being deprived of its interest in the coal so left in place; that the cost of mining other coal would be increased; and prayed for damage for the loss of the coal, to be ascertained.

Thereafter an amended petition was filed in which was employed the allegations of the original petition, but in addition thereto, it was alleged in respect to parcel 21-A "that only the surface rights are sought to be affected herein, that is, petitioners seek to acquire a right of way across the surface of said land, together with the right to make the necessary cuts and fills for the construction and maintenance of said highway, and petitioners further specifically state that they do not seek to acquire herein any right to maintenance by any of said respondents of support of the surface of said parcels by leaving in place a certain quantity of coal necessary for such support or by providing other support upon or after mining coal now in place thereunder." Following the filing of this amended petition, respondent, by leave, filed an amended answer thereto setting up further defenses, namely, that the taking of the surface of the land involved for highway purposes constitutes taking of respondent's leasehold interest in the coal underlying and immediately adjacent to the land; that the taking of the surface for highway purposes imposes a servitude on the leasehold interest in the coal and deprives respondent of the right to mine same to its damage; that the attempted exclusion by petitioners of the right to sub-

jacent support for the highway right of way is an unreasonable and unauthorized use and exercise of the power of eminent domain; is contrary to law; and an attempted taking of respondent's property without just compensation; and finally, prayed that the court determine all issues which must be decided in limine; that a jury determine the damages and compensation; and simultaneously therewith, respondent filed a motion asking the court to rule that the attempt by petitioners to take the surface rights without subjacent support for the highway is incompatible with the use for which said parcel was condemned, and was an unreasonable, arbitrary and unlawful determination. This motion was argued and denied and the case was tried December 5, 1952 to the court without a jury or commissioners pursuant to a stipulation of the parties.

At the trial petitioners introduced testimony the effect of which was to fix the value of parcel 21-A at $1,600.00, and the damages to the remainder of the tract of land as a farming unit at $400.00. The witness so testifying stated he had not investigated the existence of coal under this parcel of ground, and had limited his testimony to the value of surface rights only. Respondent called its superintendent, who identified certain exhibits as leases under which it was operating and when same were offered in evidence they were denied admission, apparently on the ground raised in the objection thereto, namely, that the exhibits were immaterial, because petitioners were not condemning the right to support from surface coal. Respondent then stated that the purpose of offering the exhibits was to show the interest of respondent in certain developed underlying coal, which respondent would be unable to mine because of the construction of the highway. Respondent then made offer of proof by its mining engineer to show that there was developed coal under the proposed turnpike highway. This offer was refused and respondent then offered to prove the exact extent and location of the coal,

and that the strata above the coal consists of soft soapstone and shale, which would subside when the coal was removed from under it; also that there had been subsidence over the mining property as much as five feet in depth where coal had been mined three hundred feet below the surface; that a part of parcel 21-A already had subsided before the construction of the highway; and further testimony as to the quality and quantity of the coal and the diminished value of the mine if required to leave the coal in place would be a total of $14,882.10, which included the effect of leaving coal within one hundred feet of each side of the highway in place; finally, that it would be uneconomical and unfeasible to extract the coal and provide other support. This offer was refused by the court. The mining engineer then was called in an attempted offer of proof to show what the results would be if this coal was not left in place, and other observations in connection therewith, which also was refused by the court. Petitioners then made a further objection to the offers on the ground that the testimony offered with regard to subsidence would be an attempt to disturb an administrative determination by the petitioners that such subsidence as would occur would not be such as would be beyond the scope of repair. The court entered judgment, fixing the compensation to respondent in the sum of $2,000.00.

Respondent now argues the two following grounds in reliance of reasons for reversal of the judgment:

1. The construction of the Denver-Boulder Turnpike over the working coal mine of respondent imposes on respondent an absolute duty to leave sufficient coal in place under and adjacent to the highway to support it, and the court erred in refusing to receive and consider the evidence offered by respondent that valuable coal would have to be left in place to adequately support the highway, and determining the compensation to which respondent is entitled without regard to the servitude imposed upon respondent's interest in said coal.

2. The duty of respondent to support the Turnpike cannot be waived, released, excluded or omitted by petitioners either on behalf of the State of Colorado or the public, since such waiver, release, omission, or exclusion is incompatible with the authority of petitioners to condemn the property for highway purposes, and with the use of such property as a highway, is contrary to law, contrary to public policy, and of no force or effect, and the court erred in determining as a matter of law by its ruling in limine, and on the evidence that petitioners could lawfully omit or exclude from the taking the right to surface support of the highway.

██ ██ As to the first proposition, we start on the premise that in Colorado, when a separation of the surface rights from mineral rights has occurred, in the absence of an express agreement otherwise, the duty of mineral estate is bound to support the surface. Our cases supporting this rule concern the rights between private persons; however, it seems logical that this rule should apply with greater force where the surface is acquired or taken by a governmental agency for a public highway, and if a duty rests upon the owner of the mineral rights to preserve and support the highway by not having the benefit of his mineral property right, it then follows that he suffers a damage for which compensation should flow. It seems trite to say that the owner has a right to remove the mineral; however, if the owner is bound by the duty of surface support, then the removal must be done in such a way as not to impair that support. By virtue of this rule the mineral estate becomes servient and as such it owed the surface or the road the support that would at all times prevent subsidence. Respondent here attempted to establish this servient leasehold condition by offering the controlling leases of the land in evidence, but objections were sustained on the theory that they were immaterial to the case. When land is acquired by condemnation for a highway, the condemner acquires not only what is understandably

known as just the surface, but, by virtue of such condemnation, it acquires whatever is necessary for the support of that surface, and that is according to the primary intention of the legislature in enacting the condemnation laws.

In the case before us the question of what was necessary or unnecessary relative to the support of the surface was determined by the Commission in an ex parte manner and in so doing, it attempted to perform a judicial function beyond its powers; and when confronted with this issue by the respondent under the dilemma he found himself in, the court erroneously refused to allow his offer to be taken into consideration. These were matters clearly to be submitted to the court or jury and would be substantial factors in determining the compensation to be paid for the land condemned.

At this point it is significant to note that when faced with respondent's answer, petitioners then shifted their claim to one not including the condemnation or taking of the coal which respondent in the first instance had the right to mine, but by this condemnation proceeding was left facing the subservient duty of supporting the surface of the highway or operating the mine at the peril of his liability to the public.

As to respondent's argument No. 2 as above outlined, it may, in fact, be resolved into one question, namely, can the petitioners lawfully exclude from consideration the matter of respondent's duty to support the surface against subsidence by what may be termed its attempted waiver or release of such right when the highway department or the petitioners determined that such support was not necessary? It is our view that such an attempt by the petitioners is in fact an attempted relinquishment of the rights of the public and the support of its highway and is beyond any possible power or authority resting with petitioners. Public policy requires first, that in establishing the highway by whatever means used, the first duty of the highway authority

is to provide every element of safety possible and no element can be discarded or not provided or withdrawn for economical or any other reason. The duties as between the condemning authorities and the owner of the land are mutual, one to see that the support of the highway is not removed, and the other not to remove. This duty of the Highway Department originates under the police power for the welfare of the public and we know of no instance where any governmental authorities have been permitted to waive the exercise of such power nor contract them away. If it be argued that by such an attempt here the condemning authorities are only precluding any action in their behalf, or that of their successors in office, our answer is that this cannot logically be done, and it certainly does not preclude any injured member of the traveling public from seeking redress against, in this case, respondent. There may be instances in which the condemner may leave some rights and privileges with the owner, and thereby limit the taking, but that does not extend to the right to make any such reservation to the land owner as is inconsistent with the use of the highway for which the property was condemned. When the land in question was condemned and a highway constructed, that a servitude upon the underlying mineral estate was created admits of no argument. This being true, that servitude caused damage and the amount thereof is a question for a jury or a commission, and not to be escaped by an administrative determination that the servitude estate was freed from liability.

Petitioners contend that the matters we have discussed herein are not pertinent, because they claim that they, as the condemning authorities, had the right to, and did, decide these questions. This sweeping statement is without support. It is not here denied that they had, in the first instance, the right to determine what ground was necessary for the purposes it was sought to be condemned, and then if the question of necessity was involved, that was to be determined in the court proc-

esses. In this and like instances, they could not waive all the elements necessary for the purposes for which the condemnation was proposed, and further, could not waive the right of the State and the public to have and keep proper and necessary support for the surface they sought to acquire. Even if there was any semblance of authority to make a judicial determination, the "administrative determination," as here exercised, was far afield from the due process required in all such administrative proceedings. It further is generally contended that the court could not inquire into this determination. The answer to such contention is obvious. If respondent here unwittingly accepted the determination by the condemning authorities and removed the support from under the highway, and was called to account for resulting damages, can it be said that he could successfully lean upon the slender reed of defense by saying that all rights of the State and the public to enforce liability had been waived?

Any other determination of the questions here discussed would be a judicial approval of the acts of the State Highway Department and the Board of County Commissioners in the construction of public highways without any concern as to the surface support, and with like approval for the construction of such highways without concern or an open inquiry and judicial determination as to the safety thereof. The trial court was in error in excluding all efforts made by respondent to establish the necessity of doing the matters and things which the condemners here failed to do under a misguided conception of authority.

 For the reasons herein indicated the judgment is reversed and the cause remanded with directions to the lower court to permit respondent to present its evidence before a commission or jury in the normal manner provided by the statutes controlling procedure in eminent domain, which statutes are to be strictly construed. The introduction of such evidence would be on the question

of whether mining the coal would cause a subsidence of the highway and if so, how much coal should be left in place, and to determine the consequential damages.