Eugene R. SIMPSON et al., Appellees,

v.

**IOWA STATE HIGHWAY COMMISSION,**
Appellant.

No. 54650.

Supreme Court of Iowa.

Feb. 25, 1972.

Richard C. Turner, Atty. Gen., James F. Petersen, Sp. Asst. Atty. Gen., and John L. Kiener, Asst. Atty. Gen., for appellant.

Prichard & Prichard, Onawa, for appellees.

BECKER, Justice.

Appeal from condemnation commission's award of damages for the taking by the Highway Commission of an easement to construct and maintain jetties near a highway bridge. The case was tried to the court which awarded condemnee a judgment of $39,200 and $5200 attorney fees. The Highway Commission appeals both awards. Reversed and remanded.

This is a somewhat unusual condemnation case. The highway department felt it needed an easement to construct jetties in the Maple River in Monona County and condemned an easement over an irregularly shaped 2.8 acres for that purpose. Neither party contends the department condemned the fee simple title to the area.

■ Maple River is a nonmeandered, nonnavigable stream. Therefore the condemnees own the entire stream bed. There is no dispute on this point. Cf. Watt v. Robbins, 160 Iowa 587, 601, 142 N.W. 387 (1913); Braden v. Board of Supervisors, 261 Iowa 973, 976, 157 N.W.2d 123 (1968).

The condemned tract was carved from a 27-acre tract owned by plaintiff partners and used by them as a gravel pit. They had purchased the 27 acres in two parcels in 1965 and 1966 for the total sum of $7500 or about $280 per acre. About two years later the condemnation commission awarded $345 damages to the 27-acre tract. The court awarded damages of $39,200. Under-

standably, the State appeals asserting excessive damages and other errors.

The damage evidence is shown below:

| (PLAINTIFFS– APPELLEES' WITNESSES) | BEFORE | AFTER | DAMAGES |
|---|---|---|---|
| B. L. PETERS | $210,000 | $168,000 | $40,000– 42,000 |
| (DEFENDANT– APPELLANT'S WITNESSES) | | | |
| JOHN D. INGRAHAM | $ 99,995 | $ 99,670 | $ 325. |
| FRANK D. HELM | $ 50,000 | $ 47,800 | $ 2,200. |
| Trial Court's judgment | | | $39,200 |

These large discrepancies are almost wholly due to plaintiff Peters' treatment of the entire 2.8 acres as a gravel pit and Mr. Ingraham's treatment of the entire area as farm land. Mr. Helm considered the gravel pit aspect but limited his estimate of the damages to the property as a gravel pit to about $2000.

■ I. Commission's first assignment of error goes to excessive damages. Our examination of the evidence is controlled by Townsend v. Mid-America Pipeline Company, 168 N.W.2d 30, 33 (Iowa 1969):

"Dealing with that subject in Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W.2d 85, 92, this court said: 'In considering the contention the verdict is so excessive as to shock the conscience and show it is the result of passion and prejudice we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear. We must also give weight to the fact the trial court, with the benefit of seeing and hearing the witnesses, observing the jury and having before it all the incidents of the trial, did not see fit to interfere. Fredrickson v. Heline, 1960, 252 Iowa 92, 106 N.W.2d 74, and citations. * * *.'"

If there is substantial evidence to support the findings of fact we do not reverse on this review at law. Rule 344(f) (1), Rules of Civil Procedure.

Here the evidence is clear that the easement condemned made it impossible for the owners to use the 2.8-acre tract as a quarry.

The evidence equally supports a finding that the 27-acre tract, when used as a quarry, had a value of at least $14,000 per acre. Comparable sales of property containing gravel suitable for quarrying purpose, similar to the property in question and within seven miles of it, were shown at $15,000 per acre. It is true the comparable sales were on a one-acre-at-a-time basis. However, three of these sales were in the development of a single quarry and could fairly be said to be comparables.

We note parenthetically that plaintiffs' only expert evidence came from one of the plaintiffs. Plaintiffs might well have used an outside expert. However, the record showed Mr. Peters to be qualified in the field of valuation of land suitable for gravel pits and substantially supported his valuation opinions.

The evidence, viewed in the light most favorable to upholding the verdict, supports the finding that use for quarry purpose was the highest and best use of the land; the quarrying operation on the 2.8-acre tract was effectively eliminated by the taking and the resultant damage to the 27-acre tract was $39,200.

II. Defendant next complains of the court's failure to consider the impact of the jurisdiction and possible action of the Iowa Natural Resources Council on plaintiffs' right to remove the valuable sand and gravel.

In Paragraph 7 of their petition plaintiffs claimed a gravel deposit was located on the land condemned, the condemnation caused damage by reason of the loss of 2.8 acres of gravel deposit which at the time condemned had a reasonable market value of $15,000 per acre. Defendant denied Paragraph 7 and by amendment alleged the Iowa Natural Resources Council has control of all flood plains and flood

ways in the State of Iowa under section 455A.33, Code, 1966. The paragraph then went on to state:

"a. Work on said flood plain and/or flood way cannot restrict the capacity of the flood way to create more than one foot of back water.

"b. That provisions must be made to retain the channel of the Maple River at its present location or approximately so by one or more of the following methods:

(1) Minimum of set back of 75 to 100 feet from the channel bank depending on the condition and potential problems is required in connection in any sand and gravel operation or        .

(2) protective measures must be made to control banks and prevent the change of stream or river courses if closer than the minimum distance or set back is allowed by the Council."

By way of reply plaintiffs admitted the Iowa Natural Resources Council has jurisdiction over the floodways of the State but denied the existence of the detailed restrictions pled by defendant. Further they pled the Natural Resources Council's restrictions would have to be reasonable restrictions that plaintiffs were prepared to meet.

Under the foregoing pleading defendant kept insisting on its right to inject the impact of the Iowa Natural Resources Council jurisdiction into the case as such jurisdiction affected the damage issue. The court consistently ruled adversely. The rulings are understandable in light of the following conclusion in the court order:

"In its amended answer the Defendant stated that the flood plane of the Maple River is under the control of the Iowa Natural Resources Council. The prayer in the amended answer asks for the relief asked for 'in its original answer', which is a request that the Plaintiffs' Petition be dismissed. The amended answer is a plea in complete denial of the Plaintiffs' Petition, and does not constitute a special defense in mitigation of damages and cannot be taken into consideration by the Court for that purpose under the evidence and the pleadings."

We hold this conclusion to be prejudicially erroneous.

Plaintiffs alleged their 27 acres was devalued from $210,000 before condemnation to $168,000 immediately thereafter. Clearly, both from their pleading (Paragraph 7 above) and their proofs, the important element in this drop was denial of the right to remove the gravel from the 2.8 acres. The allegations and theory were entirely proper and the burden of proof was on plaintiffs.

■ The presence of mineral deposits in land is a proper element of damage. If reasonable before and after market values can be determined this is simply one of the elements which form a basis for such valuation. Townsend v. Mid-America Pipeline Company, supra. If no market value can be determined such deposits are an element in determining intrinsic or actual value. Comstock v. Iowa State Highway Commission, 254 Iowa 1301, 1310, 121 N.W. 2d 205 (1963). In either case all of the factors affecting the values involved are necessary and relevant. In Townsend v. Mid-America Pipeline we quoted Comstock as follows:

"In Comstock v. Iowa State Highway Commission, 254 Iowa 1301, 121 N.W.2d 205, this court was confronted with a similar question. There an expert witness testified he had used quantities, production costs, and sales price of sand and gravel in arriving at a damage figure in connection with a condemned leasehold. The figures used by him were startlingly similar to computations under the unit rule. In resolving the problem we said, 254 Iowa at 1308, 121 N.W. 2d at 209: 'As hereinafter discussed the so-called unit rule is not the measure of damage. Neither is the contemplated

profit from the use of real estate. All of the various factors, however, may be considered in determining before and after value. Multiplying production units by the market price per unit does not fix value but the producing ability of real estate has definite bearing on value.'" (Loc. cit. 168 N.W.2d at p. 34).

In Van Horn v. Iowa · Public Service Company, 182 N.W.2d 365, 371 (Iowa 1970), we said:

"It follows, that in order to establish this diminished value the condemnee's first burden is to substantiate the market value of his property before its appropriation. Any factor that will impress a willing buyer in purchasing the land, if otherwise competent, is both material and relevant for this purpose. Johnson County Broadcasting Corp. v. Iowa State Highway Comm., 256 Iowa 1251, 1253, 130 N.W.2d 707, 708–709 and authorities cited. Thus, a landowner is permitted to show all competent facts which an owner would properly and naturally press upon the attention of a buyer with whom he is negotiating a sale and all other competent facts which would naturally influence a person of ordinary prudence desiring to purchase—not as affording a measure of recovery but as tending to disclose the real character and condition of the property and as support for the estimates of value given by the witnesses. Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 111 N.W. 1027, 1028 and citations."

As touching on this subject see Linge v. Iowa State Highway Comm., 260 Iowa 1226, 1237, 150 N.W.2d 642, 648 (1967), where the court held the existence of an ordinance declaring a highway to be a closed-access highway was relevant, even if it was invalid, because it "might well influence the sale and affect the price a purchaser would be willing to pay."

■ The rule works both ways. Plaintiffs quite properly produced their evidence as to the value of the gravel, how they would get it out of the stream bed, the advantageous effect of lack of overburden and the like. Defendant, by the same token, had the right to introduce another element; i. e., the effect of the Iowa National Resources Council's jurisdiction on this profferred evidence. This was proper both by way of cross-examination of plaintiff's valuation witnesses (to see that all relevant valuation factors had been considered) and by its own evidence. If this was evidence offered in mitigation under sections 619.7 and 619.8, Code, 1966, it was evidence which was shown by or grew out of the testimony introduced by the adverse party. More accurately, it was not mitigating evidence but contra evidence in an effort to show the elements necessary to establishment of value in the first instance. The situation is analogous to Vawter v. McKissick, 159 N.W.2d 538 (Iowa 1968), wherein we held the lessor must affirmatively show what was done to relet the premises. Lessee was allowed to show on cross-examination as well as by independent testimony that effective steps were not taken. This was not done on the basis of a specially pleaded defense but rather as defense evidence under general denial of a proposition initially alleged by plaintiff-lessor.

So it is here. The burden to prove damages for the taking was on plaintiffs. All factors must be considered in reaching the market value of the property. The factor injected by defendant was proper under a general denial.

The jurisdiction of the Iowa Natural Resources Council over the river bed, as distinguished from the shoreline and flood plain, is also in dispute. As we read the statute the Council has jurisdiction over the riverbed. Cf. Iowa Natural Resources Council v. Van Zee, 261 Iowa 1287, 158 N.W.2d 111 (1968). But whether it would, or could, prohibit removal of sand and gravel and what conditions would be reasonable are all issues remaining for determination on retrial. We hold only that these were viable issues which the State

had a right to develop. They were wrongfully prevented from so doing.

III. Having held the court to be in error we now turn to the problem of whether the error was so prejudicial as to merit reversal. Defendant made an offer of proof as is required by principles recognized in Hartwig v. Olson, 261 Iowa 1265, 158 N.W.2d 81, 85 (1968). In Rutten v. Investors Life Insurance Company of Iowa, 258 Iowa 749, 140 N.W.2d 101, 105, 106, 107 (1966), we reviewed some of the applicable rules when proffered testimony is rejected:

" 'An offer of evidence tending to defeat recovery should be of facts clear and distinct in their character and not of doubtful or uncertain import.' 53 Am. Jur. Trial section 102, page 91. For exhaustive note on this subject see 89 A.L. R.2d 279, 311, 319.

" * * * It was incumbent upon defendant in his proffer to supply sufficient details regarding such explanation to allow an intelligent judgment on admissibility. If there was further evidence relating to the conversation, other than mere conclusion 'fully explained the significance of the authorization', it should have been included in reasonably specific form. There was no error in this regard.

" * * * In considering errors assigned in relation to rulings on direct examination, we examine the questions, objections and rulings, together with similar evidence elsewhere admitted, to determine whether the rulings are prejudicial. Trachta v. Iowa State Highway Commission, 249 Iowa 374, 86 N.W.2d 849, 856. However, when error appears prejudice will be presumed, until the contrary affirmatively appears. Olson v. Olson, 242 Iowa 192, 205, 46 N.W.2d 1, 40 A.L.R.2d 1, and cases cited therein. We should also note the rule that 'the exclusion of admissible evidence which could not, if received, have changed the result is harmless error.' In re Estate of Lewman, 239 Iowa 563, 568, 30 N.W.2d 737; Goodman v. Gonse, 247 Iowa 1091, 76 N.W.2d 873.

"With these rules established we must hold that the exclusions referred to were prejudicial. The comment of this court in McNamara v. Corporation of New Melleray, 88 Iowa, 502, 507, 55 N.W. 322 is applicable here. 'We do not know whether the plaintiff would have succeeded in making such a case as the court should have submitted to the jury if he had been permitted to introduce the evidence which was improperly excluded. We can not tell to what extent, if at all, the ruling out of this material evidence prevented him from establishing the facts necessary to his recovery. * * *.' "

The offer of proof was made by defendant through the testimony of Mr. Othie R. McMurry, Director of the Iowa Natural Resources Council, as follows:

"Q. One other question, Mr. McMurry. Would the Iowa Natural Resources Council allow excavation in the Maple River, in your opinion, near the Castana River bridge closer than Mr. Looschen has testified to, that is, within 500 feet? * * *. THE COURT: Objection sustained." * * *.

"OFFER OF PROOF.

"Q. Will you go ahead and answer the question. If you can. A. In processing applications of this nature, we must assure ourselves that no other property owners are affected by the works of another individual. A rather complete hydrologic and hydraulic analysis is made of the works and each situation would be judged upon the conditions as affected. We do not have an application on file. We have not reviewed this particular project, because we simply don't have an application and plans.

"THE COURT: And you're unable to state what the Council would do in the event an application is presented.

"THE WITNESS: We would have to review the application and—

"THE COURT: All the facts.

"THE WITNESS: Yes."

■ While the offer of proof taken alone was inadequate, the refusal of the court to allow defendant to get into this matter to any reasonable degree in cross-examination and his refusal to consider the matter at all when assessing the damages, denied defendant a fair trial. Because of the court's erroneous rulings in this area, defendant was improperly restricted in cross-examination on the matter, in exhibits it sought to offer showing plaintiffs' present gravel pit was being operated under Iowa Natural Resources Council's permit and in full development of its own positive evidence on the subject. In so holding we express no opinion as to how far the Iowa Natural Resources Council can legally go in conditioning plaintiffs' right to remove gravel upon its own regulations. We hold only that defendant Highway Commission should have been allowed to offer evidence on the subject. We cannot say to what extent, if at all, these factors would affect the court's assessment of damages.

■ IV. Defendant had additional testimony aimed at showing plaintiffs could not have removed the sand and gravel in the river bed before taking. In brief the theory concerned the State's right to lateral support for its bridge abutments and other supportive structures. This theory was not pled as a separate defense but was offered in the form of expert engineering opinion. Part of the proffered testimony was rejected after objection and the included testimony was rejected by the court because there was no pleading of the defense.

Here we think the trial court acted correctly. For the reasons stated in Divisions II and III it was not necessary to plead this defense as it affected the overall evaluations of the property. However, there are other problems involved.

The exhibits would seem to indicate the bridge was at least 100 feet from plaintiffs' property line. There was no evidence of how the taking of sand and gravel would affect lateral support, except as it affected the action of the water in the river bed. This had to do with the Iowa Natural Resources Council's jurisdiction and action noted in Division II above.

Since the case is to be retried and the foundation evidence offered by defendant might be different, we should also discuss the legal propositions involved.

The general rule involving lateral support was recently recognized by this court in Pacific Indemnity Company v. Rathje, 188 N.W.2d 338, 340–341 (Iowa 1971):

"'The fact that buildings or other structures are on adjoining land does not prevent a landowner from exercising his right to excavate his own land. Thus, an owner cannot, by building a house near the margin of his land, prevent his neighbor from excavating his own soil, even though it may endanger the house. A person, in building a house contiguous and adjoining to the house of another, may lawfully sink the foundation of his house below the foundation of his neighbor without liability for any consequential damage, provided he has used due care and diligence to prevent any injury to the house of the other. * * *.' "

But defendant contends the above general rule does not apply to it. 5 Powell Real Property, § 700, p. 296 (1968) states:

"When the supported land is an adjacent public highway, the duty to provide lateral support includes the duty to support the highway in its improved condition. The public interest in highways justified this implied enlargement in the scope of the duty."

Accord: 39 Am.Jur.2d, Highways, Streets and Bridges, § 171, p. 546 (1968); 2 Thompson On Real Property (1961 Replacement) § 415, p. 651; 3 Nichols, Eminent Domain, § 9.221 [1], p. 291 (Rev. 3d

Ed. 1965). But Nichols adds in the 1971 Supplement, p. 61, "However, if the condemnor extends its activities beyond the acquired right of way to the damage of the abutting owner, there is a taking in the constitutional sense."

The philosophy underpinning the foregoing propositions was the law of Iowa in 1910 when this court held in Talcott Bros. v. City of Des Moines, 134 Iowa 113, 109 N.W. 311, that the law of lateral support applicable between individuals did not apply as between public bodies and individuals (the lateral support situation was the converse of the present case; i. e., the State was removing lateral support from land in its natural state instead of seeking such support for structures on its land). However, this position was explicitly repudiated in Liddick v. Council Bluffs, 232 Iowa 197, 5 N.W.2d 361 (1942), and Anderlik v. Iowa State Highway Comm., 240 Iowa 919, 925, 38 N.W.2d 605 (1949).

In Harrison-Pottawattamie Drain Dist. v. State, 261 Iowa 1044, 156 N.W.2d 835, 838–839 (1968), the district court enjoined the construction of a bridge which would damage plaintiff's drainage ditch. We reversed, holding mandamus to compel condemnation proceedings was the proper remedy. Pages 838–839 of 156 N.W.2d are of particular relevance:

" 'The basis of the Liddick decision is that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as rights to access (ingress and egress), light, air and view, and when such rights are destroyed or substantially impaired by such a structure in the highway as was here made, there is at least a partial taking of the property in the constitutional sense.'

"In Liddick v. Council Bluffs, supra, 232 Iowa at 217, 5 N.W.2d at 372, in discussing what meaning property has in the constitutional sense, this court quoted from 1 Lewis, Eminent Domain, Third Ed., section 63:

" ' * * * We must, therefore, look beyond the thing itself, beyond the mere corporeal object, for the true idea of property. Property may be defined as certain rights in things which pertain to persons and which are created and sanctioned by law. These rights are the right of use, the right of exclusion and the right of disposition. * * *.'

"The improvement here was such as was never contemplated at the time the right-of-way for Highway 30 was acquired. Where through prior condemnation the rights as to property taken later were not acquired, the proper remedy also is mandamus to compel further condemnation. Mapes v. Madison County, supra, 252 Iowa 395, at 398, 107 N.W.2d 62, at 64."

Mapes v. Madison County, 252 Iowa 395, 400–401, 107 N.W.2d 62, 65 (1961), held mandamus would lie to compel compensation for damage caused by loss of lateral support. The court indicated the landowner must be compensated if the damage was not contemplated at the time of the compensation:

"The principle is well stated in 18 Am. Jur., supra: 'Where, however, there is a loss that neither party had any reason to anticipate, and the possibility of which, if suggested would have been rejected as speculative and conjectural in the condemnation proceedings, it has been held that such loss may be compensated in damages in a subsequent action.' "

■ The State is constitutionally prohibited from restricting the rights of adjacent landowners or enlarging their duties in the absence of condemnation proceedings which would include such restrictions or enlargements. The right to use property up to the property line is a valuable right. Restriction of this right by reason of the fact that the neighboring property is used for public purpose would be a taking which must be compensated. We cannot enlarge the rule (as suggested by Powell), thus damaging condemnee's use

of the property without compensation. In Liddick v. Council Bluffs, supra, we quoted Great Northern R. Co. v. State, 102 Wash. 348, 353, 173 P. 40, 42 (1938), with approval:

" 'In our opinion, the theory that property rights are ever to be sacrificed to public convenience or necessity without just compensation * * * should find no lodgment in American jurisprudence.' " (Loc. cit. 232 Iowa at p. 233, 5 N.W.2d at p. 380).

■ This is really the core issue. The State has built jetties in the stream bed owned by plaintiffs. The purpose is to protect the bridge and supporting structures. The State now (in its lateral support proffer) contends damages for this taking should be limited to surface value because excavation so near the bridge would be wrongful in any event. But such a position is contra to the general law of lateral support recognized in this State and would constitute an uncompensated detriment to the contiguous property.

■ The foregoing holding is consistent with principles recognized in William E. Russell Coal Co. v. Board of County Com'rs, 129 Colo. 330, 270 P.2d 772, 774 (1954), and Manning v. New Jersey Short Line R. Co., 80 N.J.L. 349, 78 A. 200, 32 L.R.A.,N.S., 155 (1910). It is contra to language used in Commonwealth v. Solley, 384 Pa. 404, 121 A.2d 169, 171, 172 (1956); Levy v. Curlin, 241 S.W.2d 997, 999 (Ky. 1951); and Haverstraw v. Eckerson, 192 N.Y. 54, 84 N.E. 578 (1908). None of the foregoing cases is factually similar. Moreover, in the latter jurisdictions we do not know what, if any, provisions are made for compensation for this enlarged taking. We agree with the former cases that the duty to furnish lateral support not ordinarily required by law is a taking for which compensation must be paid. There is no showing that this element was considered in the original taking or purchase. There-

fore there is no enlarged duty here. Liddick v. Council Bluffs, supra, (loc. cit. 232 Iowa 234–237, 5 N.W.2d 361).

It would unduly extend this opinion to consider the evidentiary errors asserted by defendant. Enough has been said to guide the parties and the court on retrial.

V. Defendant also contends the attorney fees allowed by the court under section 472.33, Code, 1966, were excessive. The matter of attorney fees in condemnation cases was thoroughly discused in In Re Condemnation of Certain Lands, 261 Iowa 146, 153 N.W.2d 706 (1967). The matter of attorney fees may be subject to further proceedings in light of the new trial herein granted. Further review is premature as the entire matter is remanded for retrial. Cf. Jones v. Iowa State Highway Comm., 185 N.W.2d 746, 753 (Iowa 1971).

Reversed and remanded.

All Justices concur, except UHLENHOPP, RAWLINGS and LeGRAND, JJ., who dissent, and HARRIS, J., who takes no part.

UHLENHOPP, Justice (dissenting from division IV but otherwise concurring).

May a landowner remove gravel or other materials from land adjoining a highway to an extent which causes the highway to subside or in other ways damages the highway? The long-standing and universal rule of the common law is that he may not. When the public originally obtains the highway right-of-way, it acquires, under the law, the right to have the highway supported by the adjoining land. This right of support inheres in the original compensation award for the right-of-way. The same principle applies to acquisitions of rights-of-way by common carriers.

I. Following are typical statements of the general principle. The court said this

in Levy v. Curlin, 241 S.W.2d 997, 999 (Ky.):

> The recognized public prerogative not only includes the user of the public way, but also includes the right to have abutting property owners refrain from any utilization of their property which would interfere with the proper maintenance and improvement of such way. This requires the furnishing of adequate subjacent and lateral support.

And in Manning v. New Jersey, S. L. R. R., 80 N.J.L. 349, 352, 78 A. 200, 201:

> The soil adjacent to the right of way, and to such distance therefrom as may be required for such support, cannot be removed, and the clay therein cannot be mined so as to materially impair such support; or, if it is, the owner must artificially, at her own expense, support not only the right of way in its natural state, but any weight which the railroad use may add to it.

In Adlin v. Excelsior Brick Co. of Haverstraw, 129 App.Div. 713, 715, 113 N.Y.S. 1017, 1018, reh. denied, 132 App.Div. 904, 116 N.Y.S. 1130:

> It is not disputed that the rule of lateral support binds the owner of land along a highway, and that if he wrongfully excavates so close as to cause the highway to cave in he is liable for any damage caused thereby.

In Commonwealth v. Solley, 384 Pa. 404, 408, 121 A.2d 169, 172:

> An abutting land owner is charged with the duty of furnishing vertical and lateral support to a public highway in its improved condition [citing cases].

In Pollock v. Pittsburgh, B. & L. E. R. R., 275 Pa. 467, 470, 119 A. 547, 548:

> The adjoining land owner owes the duty of such [lateral] support to a highway as an obligation to the community, and, because of this superior claim, the support extends to the highway in its improved condition; the liability here differs from the duties and rights between adjoining landowners.

In City of Scranton v. People's Coal Co., 256 Pa. 332, 336, 100 A. 818, 819:

> But the abutting owner cannot remove minerals from under or adjacent to an established highway in such manner as to cause a subsidence or other injury thereto; and to do so is a nuisance, which in a clear case will be restrained in equity at the suit of the municipality. A street is entitled to such support as will keep it in place, both lateral and vertical. If the removal of coal at the side or underneath will destroy the street it may not be done. But such coal may be removed to any amount that will not injure the highway. And the amount that may be removed is a matter of fact.

See in addition Chicago C. Ry. v. Rothschild & Co., 213 Ill.App. 178, 186 ("Upon sound reason, it appears to us that where an abutting property owner, by reason of excavation, causes the street to be depressed, he should make good the damages."); Freeholders of Hudson County v. Woodcliff Land Co., 74 N.J.L. 355, 65 A. 844; Village of Haverstraw v. Eckerson, 192 N.Y. 54, 84 N.E. 578; New York Steam Co. v. Foundation Co., 195 N.Y. 43, 87 N.E. 765; Finegan v. Eckerson, 26 Misc. 574, 575, 57 N.Y.S. 605, 606 ("although, as claimed by the defendants, the right to lateral support between adjoining owners does not include the right to the support of an artificial structure, that doctrine has no application to the case of a highway"); Milburn v. Fowler, 27 Hun 568 (N.Y.); Breisch v. Locust Mountain Coal Co., 267 Pa. 546, 110 A. 242. The English decisions are to the same effect. Caledonian Ry. v. Sprot, 1 Pat. 633, 2 Macq.H.L.Cas. 449, 17 Eng.Rul.Cas. 686; North-Eastern Ry. v. Elliot, 1 J. & H. 145, 2 De G.F. & J. 423, 10 H.L.Cas. 333 (bridge). See also Benfieldside Local Bd. v. Consett Iron Co., 3 Ex.D. 54, 47 L.J.Ex. 491, 38 L.T. 530, 26 W.R. 114 (road);

Normanton Gas Co. v. Pope, 52 L.J.Q.B. 629, 32 W.R. 134 (gas pipes); London & N. W. Ry. v. Evans, 1 Ch. 16, 62 L.J.Ch. 1, 67 L.T. 630, 41 W.R. 149 (canal); Note, 17 Eng.Rul.Cas. 554.

The legal writers express the same view. The rule is stated thus in 5 Powell, Real Property, ¶ 700 at 296 (1968):

> When the supported land is an adjacent public highway, the duty to provide lateral support includes the duty to support the highway in its improved condition.

And in 3 Nichols, Eminent Domain, § 9.221-[1] at 291 (3rd ed.):

> Thus, at common law the right of lateral support is limited to the land · in its natural condition; but the establishment and construction of a highway or a railroad imposes upon adjacent land the burden of supporting the completed structure and the vehicles travelling thereon, so that the adjoining owner cannot lawfully remove such support by excavations upon his own land and impair the safety or convenience of travel upon the public easement.

In 10 McQuillin, Municipal Corporations, § 30.38 at 705 (3rd ed.):

> But, of course, the abutting owner cannot remove minerals from under or adjacent to an established highway in such manner as to cause a subsidence or other injury thereto; and to do so is a nuisance which in a clear case will be restrained in equity at the suit of the municipality. A street is entitled to such support as will keep it in place, both lateral and vertical. If the removal of coal at the side or underneath will destroy the street, it may not be done. But such coal may be removed to any amount that will not injure the highway. And the amount that may be so removed is a matter of fact and can be determined by evidence.

In 2 Thompson, Real Property, § 415 at 651, 653 (1961):

On the other hand, a landowner whose land adjoins a public highway has no right to do an act on his own land outside of the limits of the highway which will make the way inconvenient or dangerous, nor has he a right to deprive the highway of the lateral support given it by his adjoining land. . . .

> The right of the state to lateral and adjacent support of highways is superior to that of an ordinary landowner. An abutting landowner is charged with the duty of furnishing vertical and lateral support to a public highway in its improved condition.

And the editors say this in 39 Am.Jur.2d Highways, Streets & Bridges § 171 at 546, § 186 at 564:

> The preservation of lateral support to a highway, as constructed and prepared for the public use, is an obligation of the abutting landowner to the community, irrespective of whether the fee of the highway is in the public, or whether it has merely an easement for a right of way. The application of the doctrine of lateral support in the case of a public highway is somewhat broader than it is with regard to adjoining landowners, in that in the case of adjoining landowners the right is only to the support of the land in its natural state, while in the case of a highway the improvement of the land to fit its intended use as a public highway may tend to add to the lateral pressure. . . .

> As a rule, the commission of unlawful acts injurious to the proprietary rights of the public authorities in highways and streets may be enjoined. For example, where the acts of persons menace the condition of a highway directly or indirectly, by so digging or excavating upon the adjacent land as to affect the lateral support and to cause or threaten the subsidence of the highway, the exercise of the equitable power of the court may properly be invoked by the public in restraint of the continuance of such acts.

II. The law is equally clear that when a highway right-of-way is originally acquired, whether in fee or by easement, the landowner is entitled to have this duty to provide support to the highway taken into consideration in his damages. As stated in a case in which a landowner was restrained from endangering a bridge by mining (North-Eastern Ry. v. Elliot, 2 De G.F. & J. 423, 432), "He suffers no hardship from the restraint, for when the value of the land on which the bridge was to be erected was estimated the possible deterioration of the adjoining land, by reason of the support required from it, would necessarily be taken into consideration."

The manner in which the compensation problem may arise when the right-of-way is originally acquired is illustrated by Manning v. New Jersey, S. L. R. R., 80 N.J.L. 349, 350, 352, 78 A. 200, 201. In the original condemnation damage case, the trial court instructed the jury:

The plaintiff [landowner] is bound to support laterally the defendant's [railroad's] land to the extent only that the latter remains in its natural condition and not for any superimposed weight by the defendant.

The plaintiff appealed from the damage award, asserting that this instruction was erroneous. The appellate court reversed, holding that the instruction was indeed wrong:

The soil adjacent to the right of way, and to such distance therefrom as may be required for such support, cannot be removed, and the clay therein cannot be mined so as to materially impair such support; or, if it is, the owner must artificially, at her own expense, support not only the right of way in its natural state, but any weight which the railroad use may add to it.

See also William E. Russell Coal Co. v. Board of County Comm'rs, 129 Colo. 330, 270 P.2d 772. The court there held that the public officials, on originally condemning, are without authority to give up the right of support of the highway in their effort to reduce the damages the landowner may claim. And see Pennsylvania Turnpike Comm'n Appeal, 351 Pa. 139, 40 A.2d 404 (condemnation for highway includes subjacent strata as needed to support highway); Lehigh Valley Coal Co. Appeal, 351 Pa. 108, 40 A.2d 399 (same).

Iowa law is consistent with the rule followed generally that when land is taken for public use, the servitudes and burdens cast upon adjoining land are presumed to be taken into consideration. As stated in Liddick v. City of Council Bluffs, 232 Iowa 197, 236, 5 N.W.2d 361, 381:

It is true that when damages are assessed or compensation awarded in the condemnation of land for a highway, the assessing tribunal may be presumed to have taken into consideration all reasonably foreseeable uses, improvements, disadvantages, and servitudes in connection with the highway which might impair the use of, or depreciate the value of, the remainder of the abutter's property. And it is a sound policy that an assessment ought, if reasonably possible, be made once for all time.

All of the decisions which have heretofore been cited, except four, involved incidents which occurred considerably after the original acquisition of the right-of-way. In stating that the adjoining land must furnish support to the right-of-way, those decisions necessarily held that such right of support was acquired with the right-of-way and that compensation for the right of support necessarily inhered in the original award. Otherwise, those decisions would have held that a new condemnation or purchase was necessary in order to have the right of support. The four cases which arose in the original condemnation proceedings (the Manning, William E. Russell Coal Co., Pennsylvania Turnpike, and Lehigh Valley cases) demonstrate that the obligation to support the highway is involved in the original damage award.

In support of the contrary contention—that the original acquisition here did not include the right of the public to support of the highway—several Iowa cases have been cited, but they do not involve the right of support of the highway. Rather, they involve additional rights claimed by the public which manifestly did not inhere in the original condemnation award. Liddick v. City of Council Bluffs, 232 Iowa 197, 5 N.W.2d 361; Anderlik v. Iowa State Highway Comm'n, 240 Iowa 919, 38 N.W.2d 605; Mapes v. Madison County, 252 Iowa 395, 107 N.W.2d 62; Harrison-Pottawattamie Drain. Dist. v. State, 261 Iowa 1044, 156 N.W.2d 835.

In Liddick, the street grade was established in 1880 and the abutting owners improved their properties accordingly. Years later, the public authorities proposed to erect a viaduct over the street, with earthen approaches 246 and 266 feet long and with an overhead section 1,760 feet long supported by 23 sets of concrete piers. No viaduct was contemplated in 1880, and the proposed viaduct would cause the abutting property owners substantial damages from reduced access, light, air, and view. This court held that such damages were new and did not inhere in the original award. Condemnation for a street or highway necessarily contemplates that the way will have to be supported but does not contemplate that a large viaduct will be built later which causes substantial damage. Anderlik involved the same type of situation, and this court adhered to the Liddick decision. These cases are in accord with the general rule on interference with access, light, air, and view. 29 Am.Jur.2d Highways, Streets & Bridges § 163 at 538–539; 39 C.J.S. Highways § 141, at 1079.

Mapes involved a road which was negligently built so that earth from the road slid off onto the adjoining land. This creates liability. 26 Am.Jur.2d Eminent Domain § 165 at 837–839; 29A C.J.S. Eminent Domain § 110 at 447. The Harrison County case involved flooding of adjoining land and interference with drainage there. That may not be done without incurring liability. 26 Am.Jur.2d Eminent Domain § 165 at 838; 29A C.J.S. Eminent Domain § 117 at 471. All of these cases deal with situations different from the present one. They all involve situations in which additional compensation is recoverable under recognized principles of law.

Also cited is Talcott Bros. v. City of Des Moines, 134 Iowa 113, 109 N.W. 311. But that case is not analogous—it involved the right of the *adjoining land* to lateral support. The conclusion reached in that case is contrary to the rule of numerous cases that adjoining land is entitled to such support from a highway. See 26 Am.Jur.2d Eminent Domain § 176 at 853, § 204 at 887; 39 C.J.S. Highways § 141 at 1080, § 143 at 1088. Talcott was overruled in Liddick v. City of Council Bluffs, supra.

Quotation has also been made from Pacific Indemnity Co. v. Rathje, 188 N.W.2d 338 (Iowa). That case involved two private landowners, not a highway. The rule is unquestioned that private landowners are not entitled to lateral support for structures except when a grantor conveys part of his land with a view to the construction of a structure on the part conveyed—a matter which will be taken up later.

III. Implicit in the authorities is at least one basis of the doctrine requiring adjacent support of highways as improved—simple necessity, the necessary protection of the thousands of miles of public ways. Courts which have dealt expressly with the question, however, have based the doctrine on implied easement. The law in England is that when a landowner conveys land for a public way, he impliedly warrants he will not use his remaining land in derogation of his grant by removing support of the way. Caledonian Ry. v. Sprot, 1 Pat. 633, 2 Marq. H.L.Cas. 449, 17 Eng.Rul.Cas. 686. The same basis has been held in this country to underlie the doctrine. Freeholders of Hudson County v. Woodcliff Land Co., 74 N.J.L. 355, 65 A. 844. And this is so whether the public way is acquired by conveyance or by condemnation. Manning v. New Jersey, S. L. R. R., 80 N.J.L. 349, 78 A. 200. See 3 Tiffany, Real Property, § 792 at

283 (3rd ed.) ("So, if one conveys land for railroad purposes, the conveyance involves in effect a grant of the right to construct and operate the railroad in a proper manner, even in derogation of the grantor's natural rights as regards land retained by him, and such an easement is likewise vested in the railroad when the land is taken under condemnation proceedings.").

In so holding, the courts analogize the conveyance or condemnation for highway purposes to the situation in which a landowner conveys part of his land to another private person with a view to the construction of improvements on it. In that situation the landowner impliedly grants lateral support to the land conveyed as thus improved. Stevenson v. Wallace, 27 Grat. 77 (Va.); Rigby v. Bennett, 21 Ch.Div. 559; Siddons v. Short, 2 C.P.Div. 572, 577 ("where a man parts with land knowing that substantial buildings are intended to be erected upon it, he impliedly engages so to use his adjoining land as not to injure or interfere with those buildings"); 5 Powell, Real Property, ¶ 700 at 293–294 (1968) ("A similar implication can properly be made when the portion of land sold would not be useful for the known purposes for which it was bought without lateral support for its proposed structures."). This court recognized the rule in that situation in Starrett v. Baudler, 181 Iowa 965, 972–973, 165 N.W. 216, 218 (quoting from Dalton v. Angus, 6 L.R.App.Cas. 740: "'If at the time of the severance of the land from that of the adjoining proprietor it was not in its original state, but had buildings standing on it up to the dividing line, or if it were conveyed expressly with a view to the erection of such buildings, *or to any other use of it which might render increased support necessary,* there would then be an implied grant of such support as the actual state *or the contemplated use of the land would require'"*—italics added).

IV. Thus in the present case, when the right-of-way was originally obtained the public acquired as one of its rights the right of support of the highway by the adjoining land. The public is not now required to go back and show how such right was obtained in those original proceedings any more than it is required to show how it then acquired the right to lateral support of the right-of-way in a natural condition or the right of subjacent support. All of those various rights are part of the bundle of rights which, under the law, the public acquired when it originally obtained the right-of-way. Those rights inhere in the original award.

But the public is not now seeking to prohibit the adjoining landowner from using his land in a manner which will damage the bridge. Rather, the stream is threatening future damage to the bridge. The adjoining landowner cannot be required to harness the stream so as to protect the bridge. See Beal v. Reading Co., 370 Pa. 45, 87 A.2d 214. In obtaining an easement on 2.8 acres for jetties, the public is acquiring more than it now has, and it must pay compensation for the easement. 3 Nichols, Eminent Domain, § 9.221[1] (3rd ed.), 1971 Supp. at 61 ("However, if the condemnor extends its activities beyond the acquired right of way to the damage of the abutting owner, there is a taking in the constitutional sense.").

Despite the future damage which the stream might cause, however, plaintiffs as adjoining landowners have no right so to use their land as to damage the right-of-way as improved or to hasten or increase damage which the stream might cause. If removal of gravel from the 2.8-acres would do so, then, under the universal rule of the decisions, plaintiffs cannot remove such gravel, at least, not to an extent which would cause such damage. On retrial, the highway commission should be permitted to try to show what the facts are in that connection, as bearing on the damage that plaintiffs will actually sustain from the easement for the jetties.

RAWLINGS and LeGRAND, JJ., join in this dissent.